**UNITED STATES of America, Appellee,**

v.

**Peter J. RIBASTE, a/k/a P.J. Ribaste, Appellant.**

No. 89–2453.

United States Court of Appeals, Eighth Circuit.

Submitted April 9, 1990.

Decided June 7, 1990.

Byron Neal Fox, Kansas City, Mo., for appellant.

Michael J. Dittoe, Kansas City, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Peter J. Ribaste was convicted by a jury of one count of mail fraud, 18 U.S.C. § 1341 (1988), one count of making a false statement to a federally insured institution, 18 U.S.C. § 1014 (1988), and one count of making a false statement to a federal agency, the Small Business Administration (SBA), 18 U.S.C. § 1001 (1988). The District Court[1] sentenced Ribaste to six months in prison followed by three years of supervised release and a $10,000 fine. Ribaste argues on appeal: (1) his conviction for mail fraud should be overturned because the necessary mailing element of the crime was not satisfied; (2) the District Court improperly instructed the jury regarding Ribaste's asserted good faith defense; and (3) the District Court erred in not granting a mistrial after the government questioned a defense witness about a prior fraud conviction of Ribaste's partner. We affirm.

This case arises out of Ribaste's failure to disclose legally enforceable gambling debts to General Motors Corporation (GM), the Union Bank, and the SBA during the course of Ribaste's application for a GM car dealership.[2] Ribaste incurred substantial gambling debts at several Las Vegas casinos in 1986, approximately one year prior to applying, on July 24, 1987, to be a GM dealer. An applicant for a GM dealership must submit a personal financial statement listing all outstanding debts. Ribaste submitted statements to GM that did not include his $92,700 in gambling debts. In addition, as part of the purchase of the GM dealership, which then was known as Pete Maude Chevrolet, Ribaste assumed a pre-existing loan made by the Union Bank to the previous owner of the dealership. To assume the loan, Ribaste submitted a financial statement to the Union Bank and to the SBA, which guaranteed the loan. Ribaste did not list his outstanding gambling debts in the financial statements submitted to the bank or to the SBA.

Ribaste maintained at trial that he did not disclose his gambling debts out of a good faith belief that debts of this type were not legally enforceable in the state of Missouri.[3]

---

1. The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

2. Effective June 1, 1983, debts incurred by patrons of state licensed gambling casinos are legally enforceable obligations. Nev.Rev.Stat. § 463.368 (1987). A judgment obtained by a casino in the Nevada courts will be enforced against the debtor by a Missouri court. Mo. Rev.Stat. § 511.760 (1986).

3. There was considerable evidence presented at trial casting doubt on Ribaste's innocent state of mind regarding the status of his gambling debts. Prior to Ribaste's application for the GM dealership, the Las Vegas casinos made numerous efforts to collect the money owed them. In June 1986, the Barbary Coast casino sent Ribaste a letter informing him that he owed the casino $10,000. Ribaste then consulted Byron Neal Fox, an attorney licensed in Missouri, who informed the Barbary Coast of Ribaste's willing-

Following the submission of the false financial statements to GM, the bank, and the SBA, GM sent Ribaste a letter dated October 14, 1987, informing him that GM was prepared to appoint Ribaste as an owner/operator of a GM dealership if Ribaste would send certain additional documentation to GM. GM's acceptance letter was sent through the United States mail and forms the basis of Ribaste's mail fraud conviction. The false financial statements made to the bank and the SBA are the grounds for Ribaste's other two counts of conviction.

Ribaste first argues that the mailing at issue—GM's mailing of the letter accepting Ribaste as a GM dealer—was not in furtherance of the fraudulent scheme and, thus, does not satisfy the mailing element of the crime of mail fraud. We disagree.

"The federal mail fraud statute does not purport to reach all frauds, but only those limited instances in which the use of the mails is a part of the execution of the fraud, leaving all other cases to be dealt with by appropriate state law." *Kann v. United States*, 323 U.S. 88, 95, 65 S.Ct. 148, 151, 89 L.Ed. 88 (1944). To be part of the execution of the fraud, the mailing need only be "incident to an essential part of the scheme." *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1954). The Supreme Court has held that an innocent mailing—one that contains no false information—may supply the necessary mailing element. *Schmuck v. United States*, 489 U.S. 705, 109 S.Ct. 1443, 1449, 103 L.Ed.2d 734 (1989) (innocent automobile dealers' routine submission of title registration forms to Wisconsin Department of Transportation was part of used car distributor's fraudulent scheme when Wisconsin titles were prerequisite to dealers' ultimate sale of cars to retail customers and success of distributor's scheme depended on continued good relations with dealers); *Carpenter v. United States*, 484 U.S. 19, 28, 108 S.Ct. 316, 321–22, 98

L.Ed.2d 275 (1987) (routine mailing of newspapers was part of appellants' fraudulent scheme to profit from information contained in "Heard on the Street" column); *Parr v. United States*, 363 U.S. 370, 390, 80 S.Ct. 1171, 1183, 4 L.Ed.2d 1277 (1960) (fraud perpetrated by innocent mailing is not "immuniz[ed] from the ban of the statute" if the mailing is a "step in the plot"); *see also United States v. Brownlee*, 890 F.2d 1036, 1037–38 (8th Cir.1989) (mailing of titles of stolen vehicles by the Missouri Department of Revenue was part of scheme to defraud).

■ In the instant case, the fraudulent activity was the acquisition of a GM dealership through the submission of false financial statements. GM's letter tentatively accepting Ribaste as a GM dealer was, by definition, a necessary step in Ribaste's successful completion of the fraud. Ribaste's submission of the false financial statements to the lenders was a key factor in GM's decision to issue the letter, and was exactly the sort of action Ribaste sought to induce. We hold that the mailing of GM's acceptance letter was an element of Ribaste's scheme to defraud and, thus, satisfies the mailing requirement of the mail fraud statute.

Ribaste next claims that the District Court improperly rejected Ribaste's proposed instruction regarding his asserted good faith defense. He further maintains that the issue of the materiality of the false statements "should have been formulated to the jury in conjunction with Appellant's 'good faith' defense." Appellant's Brief at 10. These arguments have no merit.

All three of the crimes of which Ribaste was convicted must be committed "knowingly," and the jury was so instructed. *See* Instructions J, M, O. The court further instructed the jury:

An act is done "knowingly" if done voluntarily and intentionally, and not be-

---

ness to pay his debt. They set up a payment plan in which Ribaste agreed to pay off the debt in $1,000 installments every sixty days. Only one payment was made and the casino continued to send a statement every sixty days indicat-

ing Ribaste's indebtedness. Two weeks prior to his application for the GM dealership, Ribaste received a letter from the California Hotel informing him of his $17,000 debt owed to the hotel casino.

cause of mistake or accident or other innocent reason.

The purpose of adding the word "knowingly" is to insure that no one would be convicted for an act done because of mistake, or accident, or other innocent reason.

Instruction I. At Ribaste's request, the jury was instructed regarding Ribaste's good faith defense:

To the Government's charges ... the Defendant Peter J. Ribaste responds:

He believed that credit taken to gamble in a Las Vegas gambling casino was not a legally enforceable debt and was not a legal liability, subject to be included on a financial statement.... Finally, he believed that the statements on his Applications made at the time of their offerings were true. He neither schemed nor intended to defraud anyone of their money or any other thing of value.

The jury is reminded that the statements above set forth the defendant's theory of the facts which the jury will evaluate.

Instruction P2.

■ "[A] party is entitled to an instruction reflecting that party's theory of the case if the instruction is legally correct and there is evidence to support it." *Federal Enters. v. Greyhound Leasing & Fin. Corp.*, 786 F.2d 817, 820 (8th Cir.1986). A party is not, however, entitled to a specific formulation of an instruction and the district court is given broad discretion in framing the language of an instruction. *Lackawanna Leather Co. v. Martin & Stewart, Ltd.*, 730 F.2d 1197, 1201 (8th Cir.1984). The purpose of instructing the jury is to focus its attention on the essential issues in the case and inform it of the permissible ways in which these issues may be resolved. *Federal Enters.*, 786 F.2d at 820. We review the instructions given to determine if "the charge, taken as a whole and viewed in light of the evidence, fairly and adequately submits the issues in the case to the jury." *Swift v. R.H. Macy's & Co.*, 780 F.2d 1358, 1360–61 (8th Cir.1985).

■ Ribaste's challenges to the jury instructions are unwarranted. First, his proposed general good faith instruction was a long, wordy instruction based on *United States v. Ammons*, 464 F.2d 414 (8th Cir.), *cert. denied*, 409 U.S. 988, 93 S.Ct. 343, 34 L.Ed.2d 253 (1972). The District Court was well within its discretion to reject this instruction and to give instead an instruction in language of its choosing regarding Ribaste's specific good faith defense. *See United States v. Lisko*, 747 F.2d 1234, 1237–38 (8th Cir.1984). Second, as Ribaste concedes, the issue of materiality in false statement charges brought under 18 U.S.C. §§ 1001, 1014 is a question of law for the district court to decide and it is proper for the court to inform the jury that the allegedly false statements have been found to be material as a matter of law. *See United States v. Adler*, 623 F.2d 1287, 1292 (8th Cir.1980). The District Court was not required to couple its statement concerning materiality with an instruction regarding good faith as a defense.

■ Reviewing the instructions as a whole, we have no difficulty concluding that the jury was adequately instructed regarding the issues at trial. The jury was clearly informed that Ribaste could not be convicted unless the jury found that he made the false statements at issue knowingly and not out "of mistake or accident or other innocent reason." Instruction I. The instructions given by the District Court were entirely proper and Ribaste's attacks on the instructions afford him no grounds for reversal of his convictions.

■ Ribaste's final argument is that the District Court improperly denied his motion for a mistrial after the government questioned a defense witness about a previous fraud conviction of Ribaste's partner, Peter Franklin. We disagree.

For a time prior to Ribaste's purchase of Pete Maude Chevrolet, Ribaste and Franklin managed and operated the GM dealership through a corporation the two men formed, F & R Management Group, Inc. After Ribaste purchased Pete Maude Chevrolet, Franklin served as general manager of the dealership and was responsible for

the day-to-day operation of the business. At trial, the government asked defense witness Brice Ackerman, an employee at Pete Maude Chevrolet, if he knew of Franklin's previous felony conviction for bankruptcy fraud. Counsel for Ribaste immediately objected to the question and moved for a mistrial. The District Court sustained the objection but denied the motion for mistrial; the witness gave no answer to the government's question. At Ribaste's request, the court instructed the jury as follows:

> Members of the jury, I have sustained an objection to the question and the witness will not be responding. And if I change my mind on something I will so inform you. But as of this time I advise you that you should disregard any question about the fact, the fact the question was asked doesn't prove what the facts are. And you will disregard any question about whether Mr. Franklin had some kind of criminal conviction or whether he was a decorated war veteran or whatever as not being pertinent in this case.

Transcript Vol. IV at 90–91.

The decision whether to grant a mistrial because of a prejudicial statement made in the presence of the jury lies within the sound discretion of the district court. *United States v. Elem*, 845 F.2d 170, 172 (8th Cir.1988). Ordinarily, the admission of a prejudicial statement may be "cured by striking the testimony and instructing the jury to disregard the remark." *United States v. Muza*, 788 F.2d 1309, 1312 (8th Cir.1986) (quoting *Batten v. Scurr*, 649 F.2d 564, 569 (8th Cir.1981)). To determine the prejudicial effect of an improper comment, we examine the comment in the context of the whole trial and weigh "the prejudice created ... against the strength of the evidence of [appellant's] guilt." *Id.* (quoting *United States v. Reed*, 700 F.2d 638, 646 (11th Cir.1983)).

In the context of the instant trial, we have no difficulty concluding that any error made by the government in posing the question at issue was harmless. The question was an isolated incident during the course of a five-day trial. The jury was immediately instructed to disregard the remark. Ribaste admitted making the false statements that are the subject of this prosecution; the primary issue determined by the jury was whether Ribaste made the false statements in a good faith belief that they were true. The prior felony conviction of Ribaste's partner has no bearing on the resolution of this issue. We have reviewed the record and are convinced the jury would have returned the same verdict absent the improper question. The District Court did not abuse its discretion in denying Ribaste's motion for a mistrial.

Finding no basis for reversal, we affirm Ribaste's convictions on all three counts.