UNITED STATES of America, Appellee/Cross Appellant,

v.

Larry R. WILLIAMS, Appellant/Cross Appellee.

**Nos. 90–2331, 90–2771 and 90–2870.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1991.

Decided June 12, 1991.

---

Charles D. Barnett, Texarkana, Ark., for appellant/cross appellee.

William M. Cromwell, Fort Smith, Ark., for appellee/cross appellant.

Before MAGILL, Circuit Judge, ROSS, Senior Circuit Judge, and HUNTER,[*] Senior District Judge.

ROSS, Senior Circuit Judge.

---

[*] The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri, sitting by designation.

These consolidated appeals[1] arise from two related cases in which Larry R. Williams (Williams) was the defendant. The first case (the cattle case) deals with Williams' conviction of six counts of selling cattle and timber that had been pledged as collateral to the Farmers' Home Administration (FmHA), in violation of 18 U.S.C. § 658. The district court sentenced Williams to twenty-four months imprisonment and twenty-four months supervised release after enhancing the offense level on the basis of evidence of Williams' attempt to influence two jurors. The government then tried Williams on two counts of influencing a juror in violation of 18 U.S.C. § 1503; Williams was convicted on both counts. The second case (the jury tampering case) deals with Williams' conviction of two counts of jury tampering. The district court refused to impose an additional sentence on Williams for the jury tampering convictions. The district court believed that enhancing Williams' sentence in the cattle case on the basis of jury tampering and thereafter sentencing Williams for jury tampering would constitute multiple punishment in violation of the Double Jeopardy Clause of the Fifth Amendment. Nevertheless, the district court did impose a four month sentence in the jury tampering case because Williams had committed the jury tampering while he was on bond.[2]

Williams now appeals the convictions in the cattle case. Both parties appeal the sentence imposed in the jury tampering case. We affirm the convictions in the cattle case but remand both cases for resentencing.

## I. FACTS.

The government charged Williams with fraudulently selling timber and cattle which he had pledged to the FmHA as collateral on a loan. The first six counts charge, under 18 U.S.C. § 658, illegal sales of cattle from August 1984 to April 1989. Each of those counts only charges conduct occurring within one calendar year; for instance, count one charges the illegal sales occurring in 1984, count two charges those occurring in 1985, and so on. Counts seven and eight charge two illegal sales of timber during 1987. The jury convicted Williams on counts three through eight, for the sales of cattle and timber made between 1986 and 1989.

The case was scheduled for trial on February 26, 1990. After a jury was selected and sworn, the court excused the jurors and directed them to return for trial on February 28. The two day delay was intended to afford the court an opportunity to dispose of pending motions. Before the jury returned, a third party contacted two of the jurors and attempted to influence them on behalf of Williams. The jurors promptly reported these contacts to the trial judge who then questioned the jurors. The court told counsel about the problem. The government proposed that the two jurors be dismissed, the sole alternate be seated, and the trial proceed with eleven jurors. Because Williams objected to proceeding with eleven jurors, the government moved for a mistrial which the district court granted over Williams' objection.

In another pretrial ruling, the court refused to compel the attendance of an FmHA official, Neal Johnson, after holding a telephone conference with Mr. Johnson. Williams contended that Mr. Johnson was a necessary witness for the proper presentation of another of Williams' pretrial motions, a motion to dismiss for selective prosecution. Similarly, when the case fi-

---

1. No. 90–2331 was submitted to the panel on January 10, 1991. On the court's own motion on March 11, 1991, No. 90–2771 and No. 90–2870 were taken under submission by the panel on the briefs and joined with Case No. 90–2331.

2. Congress has provided for such an enhancement in 18 U.S.C. § 3147 which provides:

A person convicted of an offense committed while released under this chapter shall be sentenced, in addition to the sentence prescribed for the offense to—

(1) a term of imprisonment of not more than ten years if the offense is a felony; or

(2) a term of imprisonment of not more than one year if the offense is a misdemeanor.

A term of imprisonment imposed under this section shall be consecutive to any other sentence of imprisonment.

nally went to trial and after the government had finished presenting its case, Williams announced that his first four witnesses would be four attorneys who had represented Williams in civil litigation against the FmHA during periods covered by the indictment. The court ruled that the evidence could not be presented as a defense because it was not relevant to the issue of intent.

In still another pretrial ruling, the district court denied Williams' motion for change of venue. The fact that the first attempt to try the case ended in a mistrial was reported in the local news media along with allegations that Williams was involved in the jury tampering. Because of the news reports, Williams moved for a change of venue, claiming that widespread publicity would deny him a fair trial. The voir dire revealed that fourteen venirepersons had seen or heard some of the news reports. The court carefully screened the fourteen and struck only one for already having formed an opinion that Williams was guilty. A second venireperson was struck because of her association with a potential government witness. Williams' motion to strike for cause the remaining twelve was denied, and only two of the twelve were seated on the jury.

After the presentation of the case, the jury sent two notes to the court. The first note stated, "All counts saying that he's guilty from evidence that we've seen, but not guilty as charged of criminal intent." The court acknowledged that, while the note was difficult to understand, the jury was apparently requesting an explanation of something. Williams' counsel suggested, and the court agreed, that the jury might be referring to the statutory phrase "intent to defraud" which appeared in Instruction 11. The court, without objection from Williams or the government, referred the jury to Instruction 11, which the court stated, "[C]ontains the elements of the charges."

Later, the jury sent another note which asked "Could one of our jurors talk to the judge concerning criminal intent?" Williams' counsel proposed that the court

respond, "The jury should refer to court's Instruction No. 11." Instead, the court responded, over Williams' objection, "Instruction 11 defines intent to defraud. I cannot speak with any juror about the matter." Thereafter, the jury returned verdicts of guilty on counts three through eight and verdicts of not guilty on counts one and two.

At the August 2, 1990 sentencing hearing in the cattle case, the court took judicial notice of the testimony of Bill Silliman, the person who improperly contacted the two jurors in February. Silliman gave sworn testimony, at his own guilty plea hearing, that he had attempted to influence the jurors on behalf of Williams at Williams' request. On the basis of the government's charges of influencing a juror and Silliman's testimony, the district court increased Williams' base offense level by two points for obstruction of justice.

Afterwards, on August 20, 1990, the government proceeded to trial against Williams on the two charges of jury tampering in violation of 18 U.S.C. § 1503. The jury convicted on both counts. Nevertheless, the district court did not impose a sentence on these convictions because it thought that to do so would constitute double jeopardy, inasmuch as Williams' sentence on the fraud convictions in the cattle case had been enhanced on the basis of jury tampering. The court did impose a four month sentence enhancement pursuant to 18 U.S.C. § 3147, because Williams committed the jury tampering offense while free on bond.

On appeal from the fraud convictions, Williams raises fourteen points of error. Both Williams and the government raise double jeopardy issues relating to the jury tampering convictions and sentencing. The government appeals the district court's decision not to impose a harsher sentence on the jury tampering convictions, and Williams challenges, on double jeopardy grounds, the four month sentence enhancement imposed under 18 U.S.C. § 3147.

## II. THE CATTLE CASE.

The indictment charged Williams with eight counts of violating 18 U.S.C. § 658,

which authorizes the criminal punishment of "[w]hoever, with intent to defraud, knowingly conceals, removes, disposes of, or converts to his own use or to that of another, any property mortgaged or pledged to, or held by, ... the Secretary of Agriculture acting through the Farmers' Home Administration...." Williams now claims that the district court's responses to the two notes from the jury had the effect of completely deleting the words "intent to defraud" from Instruction 11, thereby allowing the jury to find Williams guilty of the § 658 violations without finding the necessary intent to defraud.

In this appeal, Williams' bottom line seems to be that Instruction 11 is defective in that it did not adequately address the issue of "intent to defraud." However, because Williams made no objection at trial to Instruction 11, he now argues instead that the court's responses to the jury's notes somehow changed the content of Instruction 11. We note that the court's responses to both notes merely directed the jury to review Instruction 11. Williams cannot argue now that the instruction is a correct statement of the law, while arguing at the same time that the court's directions to the jury to review Instruction 11 resulted in the deletion of an essential element of the offense. It seems that Williams is attempting some type of back door attack on Instruction 11 since he failed to object to the instruction in the first place. We, therefore, restrict our analysis of Williams' "intent to defraud" argument to whether Instruction 11 was plain error resulting in a miscarriage of justice.

We begin this analysis by examining Instruction 11. In Instruction 11, the court addressed the elements of a § 658 violation. This instruction reads as follows:

ELEMENTS OF OFFENSE;

BURDEN OF PROOF

The crime of knowingly disposing, with the intent to defraud, of property that had been pledged as collateral for a government loan, as charged in each count of the indictment, has two essential elements, which are:

*One,* concealing, removing, disposing of, or converting to one's own use or the use of another, property that was pledged as collateral to the Farmers' Home Administration; and

*Two,* doing that act knowingly.

For you to find the defendant guilty of the crime charged under any count, the government must prove all of these essential elements beyond a reasonable doubt as to that count; otherwise you must find the defendant not guilty of the crime charged under that count.

■ As pointed out above, Williams made no objections to Instruction 11 at trial; indeed, both parties agreed that Instruction 11 was a correct statement of the law. Therefore, our review of Instruction 11 is limited to plain error. As this court stated in *United States v. Sanders,* 834 F.2d 717, 719 (8th Cir.1987):

Issues not properly preserved at the district court level and presented for the first time on appeal ordinarily will not be considered by this court as a basis for reversal unless there would be plain error resulting in a miscarriage of justice. Fed.R.Crim.P. 52; *Edwards v. Hurtel,* 724 F.2d 689, 690 (8th Cir.1984) (per curiam).

■ It was error for the court to exclude the third element of a § 658 violation, i.e., that the act of concealing, disposing of, etc. collateral be committed with the intent to defraud. *See United States v. Porter,* 842 F.2d 1021, 1026 (8th Cir.1988); *United States v. Grissom,* 645 F.2d 461, 463–64 (5th Cir.1981). We cannot say, however, that the omission of this third element, under Williams' set of facts, rises to the level of plain error.

This court "evaluates the adequacy of a trial court's instructions by considering them as a whole." *United States v. Casperson,* 773 F.2d 216, 223 (8th Cir.1985); *see also United States v. Ribaste,* 905 F.2d 1140, 1143 (8th Cir.1990). We note that here, the words "intent to defraud" are present in Instruction 11, "proof of intent"

is covered in Instruction 12 [3] and "intent and motive" are discussed in Instruction 13 [4].

Here, the jury made clear that it understood that intent to defraud was an essential element of the crime by asking the court to define the term. Williams' counsel made no objection to the court's response to the first note. Furthermore, the jury returned a guilty verdict only on Counts three through eight. These charges occurred during 1986 and after, when Williams sold mortgaged property in other persons' names and funnelled the funds through sham accounts.

On the other hand, the jury found Williams not guilty on Counts one and two. These counts dealt with the sale of mortgaged cattle during 1984 and 1985. The evidence showed that during these years Williams sold mortgaged cattle in his own name. We believe that the difference in the jury's verdict on the fraud charges indicates that the jury was able to separate the proof on the various counts of the indictment, correctly apply the instructions to the evidence, and appropriately consider the intent to defraud element.

We recognize that the addition of the third element or simply a definition of "intent to defraud" would have made Instruction 11 complete. However, under these facts, where Williams so blatantly defrauded the United States Government and where "intent" and "proof of intent" were set forth elsewhere in the instructions, we find that any error resulting from the omission of the third element was harmless error. In the recent case of *Arizona v. Fulminante*, —— U.S. ——, 111 S.Ct. 1246,

113 L.Ed.2d 302 (1991), the Supreme Court stated:

> Since this Court's landmark decision in *Chapman v. California*, 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705] (1967), in which we adopted the general rule that a constitutional error does not automatically require reversal of a conviction, the Court has applied harmless error analysis to a wide range of errors and has recognized that most constitutional errors can be harmless.

*Id.* at ——, 111 S.Ct. at 1263. In *Fulminante*, the Supreme Court pointed to several cases to support its finding that most constitutional errors can be harmless. Two of the cases mentioned in its opinion, which are significant to our discussion in the instant case, are *Carella v. California*, 491 U.S. 263, 266–67, 109 S.Ct. 2419, 2420–21, 105 L.Ed.2d 218 (1989) (jury instruction containing an erroneous conclusive presumption may constitute only harmless error, case remanded for lower court to make that determination in the first instance) and *Pope v. Illinois*, 481 U.S. 497, 501–04, 107 S.Ct. 1918, 1921–23, 95 L.Ed.2d 439 (1987) (jury instruction misstating an element of the offense may constitute only harmless error, case remanded for lower court to make that determination in the first instance).

We find that any error in the instant case falls within this category of harmless error and that no miscarriage of justice resulted from using Instruction 11 or from the district court's responses to the two notes.

---

**3.** Instruction 12 states:

PROOF OF INTENT

   Intent may be proved by circumstantial evidence. Indeed, it can rarely be established by any other means. We simply cannot look into the head or mind of another person. It is impossible physically to do that. So, while witnesses may see and hear and so be able to give direct evidence of what a defendant does or fails to do, of course, there can be no eyewitness account of the state of mind with which the acts were done or omitted. But what a defendant does or fails to do may indicate intent or lack of intent to commit the particular offense charged.

**4.** Instruction 13 states:

INTENT AND MOTIVE

   Intent and motive should never be confused. Motive is what prompts a person to act, or fail to act. Intent refers only to the state of mind with which the act is done or omitted.

   Personal advancement and financial gain are two well-recognized motives for much of human conduct. These motives may prompt one person to voluntary acts of good, another to voluntary acts of crime.

   Good motive alone is never a defense where the act done or omitted is a crime. So, the motive of a defendant is immaterial except insofar as evidence of motive may aid determination of state of mind or intent.

We also note that "the evidence of [Williams'] guilt on the indictment as a whole was overwhelming...." *United States v. Sanders, supra,* 834 F.2d at 720. Therefore, we find no plain error in Instruction 11.

■ In addition to his arguments relating to "intent to defraud," Williams raised several other issues on appeal. We will address these other issues, which can be most expediently resolved. Williams claims that the district court erred in denying his motion to dismiss for selective prosecution. In order to prevail on this claim, Williams must demonstrate: (1) that he has been singled out for prosecution while others similarly situated have not been prosecuted for similar conduct; and (2) that the government's action was based on an impermissible motive such as race, religion or an attempt by the defendant to secure other constitutional rights. *United States v. Holmes,* 794 F.2d 345, 347 (8th Cir.1986). Williams relied primarily on a May, 1990 article appearing in the *Farm Journal* which indicated that the FmHA had forgiven substantial farm loan indebtedness in Arkansas. Williams has failed to explain, however, how the article establishes that those Arkansas farmers, whose indebtedness was forgiven, were similarly situated to Williams. Accordingly, we reject this argument.

Williams also complains that the district court erred in dismissing the indictment on grounds of prosecutorial misconduct. The "prosecutorial misconduct" to which Williams objects is that the same Assistant United States Attorneys were participating in both civil and criminal proceedings against him. Williams cites no authority in support of his argument that this is impermissible, nor are we aware of any such authority. Therefore, this argument is also rejected.

■ Williams also protests that the FmHA refused to disclose "everything that was in the file of Larry R. Williams" and that "[t]he lower Court did not lift one finger to assist in obtaining this information when this information was brought to the Court's attention." App. Brief at 20. Williams has failed to identify with precision the error of which he now complains. The government has suggested that Williams is complaining of the district court's refusal to continue the trial until the FmHA complied with his discovery demands.[5] The government informed the lower court that the FmHA had responded to Williams' Freedom of Information request and that the FmHA probably would not have a "file" on Williams. In this appeal, the government argues that the district court properly denied the oral request for a continuance because there is no allegation that the United States Attorney's Office failed to comply with proper discovery requests, nor has Williams made any showing that any information was withheld. We agree. The district court committed no error and we reject Williams' argument.

■ Next Williams challenges the district court's denial of his motion for a change of venue. He contends that "[a]lthough the Court tried to take adequate protection with these jurors, still that was in the back of their minds and one cannot say for sure whether or not it entered into their deliberations perhaps unconsciously." App. Brief at 21. The district court has broad discretion to strike jurors for cause absent a showing of actual prejudice. *United States v. Huddleston,* 810 F.2d 751, 753 (8th Cir.1987). Williams certainly failed to show actual prejudice of any of the twelve venirepersons retained. Indeed, Williams seems to be arguing that the twelve venirepersons' bias be presumed. This is not the law. Williams has failed to show that the district court abused its discretion in denying his motion to strike the twelve venirepersons. Accordingly, we are not persuaded by this argument and it, too, is rejected.

■ The district court also denied Williams' motion to dismiss or in the alternative for a new trial based on the Agricul-

---

5. Apparently, Williams' request for a continuance was oral. The basis of the request was that Williams had requested information from the FmHA but never received the information. Thus, Williams asked that the trial be continued until the FmHA complied with his requests.

ture Credit Act of 1987, 12 U.S.C. § 2001, *et seq.* Apparently, Williams is arguing that this statute, which provides certain rights and remedies in civil proceedings to debtors of the FmHA, erects a complete bar to prosecution for a debtor's illegal disposal of collateral. Williams cites no authority for this proposition, nor are we aware of any such authority. This argument is also rejected.

Williams' also argues that the trial court erred in not allowing expenses and arrangements to be made for the expert testimony of a real estate appraiser. This argument is without merit. Similarly, Williams' argument that the trial court erred in declaring a mistrial in February is frivolous, inasmuch as Williams himself caused the mistrial by attempting to bias two jurors.

We find no reason to disturb the jury's verdict. Therefore, Williams' fraud convictions are affirmed.

## III. THE JURY TAMPERING CASE.

After Williams was convicted of jury tampering, the district court calculated his total offense level under the Sentencing Guidelines to be twenty[6]. Williams was found to have a criminal history category of I. Therefore, in this case, the Guidelines call for a range of imprisonment of thirty-three to forty-one months. The district court sentenced Williams to thirty-seven months imprisonment (thirty-three months for jury tampering and four months enhancement for committing the offense while on bond). The district court then voided the thirty-three months for jury tampering, reasoning that since Williams had already received a "sentence" for the jury tampering (in the form of a two-level *enhancement* for obstruction of justice in

the cattle case), that another sentence for the same offense would violate the Double Jeopardy Clause of the Fifth Amendment. The remaining four months were to run consecutive to the sentence in the cattle case.

We disagree. Although the court in the cattle case inquired into the jury tampering offense during the sentencing hearing, at no time was Williams put "in jeopardy" for the jury tampering until the actual trial for the jury tampering. "Rather, [Williams] was only put 'in jeopardy' of receiving a harsher sentence for the [fraud counts] than he otherwise would have received." *United States v. Koonce,* 885 F.2d 720, 722 (10th Cir.1989).

In any event, we believe that the Sentencing Guidelines adequately address Williams' situation. In § 3D1.2(c) of the Guidelines, "Groups of Closely–Related Counts" are defined to include a situation "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." Application Note 5 further explains this subsection:

> Subsection (c) provides that when conduct that represents a separate count, *e.g.,* bodily injury or *obstruction of justice,* is also a specific offense characteristic in or other adjustment to another count, the count represented by that conduct is to be grouped with the count to which it constitutes an aggravating factor. This provision prevents 'double counting' of offense behavior.

(emphasis added).

---

**6.** Williams' total offense level was calculated as follows:

| | |
|---|---|
| 2 counts of jury tampering . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12 base level |
| (Guidelines § 2J1.2) | |
| Substantial interference with justice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 level enhancement |
| (Guidelines § 2J1.2(b)(2)) | |
| Perjury during trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 level enhancement |
| (Guidelines § 3C1.1) | |
| Committed crime on bond . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 level enhancement |
| (Guidelines § 2J1.7) | |

20 TOTAL OFFENSE LEVEL

The Guidelines, in § 3D1.3(a), go on to spell out the correct procedure to be followed when a group of closely-related counts is involved in a defendant's sentence:

> In the case of counts grouped together pursuant to § 3D1.2(a)-(c), the offense level applicable to a Group is the offense level, determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three, for the most serious of the counts comprising the Group, *i.e.*, the highest offense level of the counts in the Group.

Application Note 2 of this subsection explains that it is usually necessary to determine the offense level for each of the counts in a group in order to determine which of the counts carries the highest level.

■ In our opinion, the Guidelines call for the "grouping" of the cattle case and the jury tampering case. The offense levels of the two cases should have been compared to determine which case carried the highest offense level. The district court gave the cattle case an offense level of seventeen and the jury tampering case received an offense level of twenty. Therefore, the highest of these, twenty, is the offense level which should have been assessed on the "group."

■ Furthermore, we see no difference in enhancing a defendant's criminal history category on the basis of conduct which *has not yet* resulted in a criminal conviction and enhancing a criminal history category on the basis of conduct which *has already* resulted in a criminal conviction. If, as Williams contends, the present situation constitutes a double jeopardy violation, then we would have to find that sentence enhancements which the federal courts utilize daily are also unconstitutional. We, therefore, reject Williams' position and find that Williams' sentence enhancement on the basis of his prior criminal conduct plus the eventual imposition of a sentence on that same criminal conduct does not violate double jeopardy principles.

We, therefore, remand for resentencing with instructions to vacate the twenty-four month sentence in the cattle case, and add an additional thirty-three months to the four month sentence already in place for the jury tampering counts, thus resulting in a single thirty-seven month sentence for the "group." We believe that such a sentence does not violate the double jeopardy clause, nor does it violate Williams' due process rights. *See Jones v. Thomas*, 491 U.S. 376, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989).

## IV. CONCLUSION

We affirm Williams' fraud convictions and remand both cases for resentencing in accordance with the instructions set out above.

HUNTER, Senior District Judge, dissenting.

I respectfully dissent.

The majority today affirms six convictions for conduct which is not a crime. The verdict director, which purported to define the alleged offense, omitted an essential element of the crime: specific intent to defraud. Neither the district court nor government counsel understood that intent to defraud was a distinct element of the charged offenses. Williams' counsel's misunderstanding was undoubtedly the reason that the issue was not properly preserved for appellate review. The jury's understandable confusion was evidenced not only by its two notes to the court requesting clarification concerning the requisite intent, but also by its unequivocal finding that Williams was "not guilty as charged of criminal intent." The majority nonetheless concludes that this jury of twelve laypersons was able to recognize what the necessary elements of the crime were.

## BACKGROUND

During a hearing on the various pretrial motions, the district court stated, "I think this intent to defraud business really means an intent to convert the proceeds to one's own use. I think that's good enough." Transcript of February 26–27

(hereinafter "Feb. Tr.") at 44. The court later addressed the subject again: "I think all that's required for the intent is to have the desire to sell the thing off and not have the proceeds go to the government.... It's a matter of law. The only intent required [of Williams] is that [he] entertain that kind of intent that's required for conversion in common law." *Id.* at 59. "[T]he crime is essentially breach of contract, in a sense. I mean it's selling something without permission from the government when you're under a contractual obligation to them." Transcript of April 10 (hereinafter "April Tr.") at 172.

During a discussion of the second note from the jury, the court stated:

It seems to me that [instruction] number eleven is about as plain as it could be. Here's the crime. The element of intent to defraud doesn't actually appear in the instruction as an element. It says that the crime of doing X with intent to defraud consists of two things, converting to one's own use the property of another and doing it knowingly.

\* \* \* \* \* \*

That's the definition of the crime. *I'm not sure we even needed these intent instructions [Instructions 12 and 13], because intent is not an element of the crime.*

\* \* \* \* \* \*

*[I]f these two things are proved, that is an intent to defraud.* That's what I'm saying, that this is the definition. In other words, we've already defined intent to defraud.

\* \* \* \* \* \*

*I think under this statute there doesn't have to be any intent to deceive.* You know, I think that the cases are clear that all you've got to do is have the intent required to commit the tort of conversion, whether you're deceiving them or not, sticking money that belongs to somebody else in your pocket.

*Id.* at 229–30, 232 (emphasis added). Government counsel labored under the same misunderstanding:

It seems to me that also perhaps, Your Honor, they may be hung up thinking that intent to defraud is an element of the defense [sic] rather than—

\* \* \* \* \* \*

Maybe could the [note to the jury] include that intent to defraud is not an element of the offense?

\* \* \* \* \* \*

That's why government counsel suggested putting "intent to deceive or intent to defraud is not an element of the offense."

*Id.* at 230, 232.

As the majority correctly notes, not even defendant's counsel clearly understood the problem with Instruction 11 as evidenced by the fact that he raised no objection to its omission of the "intent to defraud" element. Williams' counsel had some vague awareness of a problem: in closing argument he argued that in order to find Williams guilty, the jury would have to find that he intended to defraud the FmHA. Also, in response to the jury's first note Williams' counsel stated to the court, "Your Honor, I would suggest that you say that that is a part of the consideration, that they have to find intent to defraud." *Id.* at 225. Government counsel then remarked, "Well, that's not exactly true." *Id.* It is against this background of the parties' and the court's misunderstanding of the law and the jury's confusion about its charge that we should consider the effect of the erroneous verdict directing instruction.

## DISCUSSION

The statute and the caselaw in this Circuit are clear that one of the essential elements of the offense created by 18 U.S.C. § 658 is the *specific intent to defraud. United States v. Porter,* 842 F.2d 1021, 1026 (8th Cir.1988).[1] The district

---

**1.** Government counsel suggested at trial that intent to defraud does not mean intent to deceive. April Tr. at 228. Counsel cited *United States v. McGuire,* 744 F.2d 1197, 1200 n. 2 (6th

Cir.1984), for that proposition. The *McGuire* court did not expressly discuss whether intent to defraud and intent to deceive are synonymous. Rather, it quoted the instruction given in that

court in this case instructed the jury that there are only two elements to the crime and deliberately omitted the "intent to defraud" element. The majority acknowledges that the verdict director, which omitted the essential element of intent to defraud, was erroneous but nevertheless concludes that the error was harmless.

The majority cites *Carella v. California*, 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989), in support of its conclusion that any error in the instruction is harmless. Part of what the majority fails to discuss, however, is that in *Carella* the Supreme Court unanimously held that the instructions in that case, which erected mandatory conclusive presumptions of certain elements of the crimes, "violated the Fourteenth Amendment" because they "directly foreclosed independent jury consideration of whether the facts proved established certain elements of the offenses with which Carella was charged." *Id.* at 266, 109 S.Ct. at 2420. The Court further held that the error might be harmless but if, and only if, "no rational jury could find the predicate acts but fail to find the fact presumed." *Id.* at 266–67, 109 S.Ct. at 2421.

In the present case, the district court undoubtedly believed that a knowing misappropriation of mortgaged property constitutes intent to defraud as a matter of law; as noted above, the district court believed that "if these two things [converting to one's own use the property of another and doing it knowingly] are proved, that is an intent to defraud." April Tr. at 230. By instructing the jury that the verdict director defined intent to defraud, the court, in effect, established a mandatory presumption of that intent based upon

proof of a knowing misappropriation of mortgaged property.[2] With the aid of this irrebuttable presumption, the government's case is reduced to proving a knowing misappropriation of property mortgaged to the government. That conduct alone is no crime. It becomes a violation of section 658 only when the defendant engages in that conduct with the specific intent to defraud. Just as the jury instructions in *Carella* "directly foreclosed independent jury consideration of whether the facts proved established certain elements of the offenses," Instruction 11 and the district court's responses to the jury's notes "directly foreclosed independent jury consideration" of whether Williams acted with intent to defraud. *Id.* at 266, 109 S.Ct. at 2420. Thus, under *Carella*, the district court's instruction in this case indisputably violated Williams' constitutional right to have *the jury* determine whether he acted with intent to defraud.

The critical issue in this case is whether the erroneous verdict director requires reversal. As the majority notes, Williams did not object to the giving of Instruction 11.[3] An error "not brought to the attention of the [district] court" is reversible only if it constitutes plain error. *See* Fed.R.Crim.P. 52(b). However, once the appellant shows that the district court committed *constitutional* error, the government bears the burden of proving the error harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1969).

Under *Carella*, an erroneous instruction which erects a mandatory conclusive pre-

---

case which stated that "[t]o act with 'intent to defraud' means to act knowingly and *with the specific intent to deceive* ...." *Id.* at 1201 n. 2 (emphasis added). The suggestion that there is some difference between "intent to defraud" and "intent to deceive" is unsupported by caselaw.

2. If there was no presumption of intent to defraud in this case, then there was not even the shadow of a finding—by judge or jury—that Williams acted with intent to defraud. In the final analysis, it really makes no difference whether the district court's error is character-

ized as erecting a mandatory presumption of specific intent to defraud or simply eliminating that intent as a consideration. In either case, Instruction 11 "foreclosed independent jury consideration of whether the facts proved" established Williams' intent to defraud. *Carella v. California*, 491 U.S. 263, 267, 109 S.Ct. 2419, 2421, 105 L.Ed.2d 218 (1989).

3. He did, however, object to the court's response to the jury's second note where the court instructed the jury that Instruction 11 defined intent to defraud.

sumption of an element of a crime is harmless-error if, and only if, "no rational jury could find the predicate acts but fail to find the fact presumed." *Carella*, 491 U.S. at 267, 109 S.Ct. at 2421. Four members of the Court stated that the harmless-error analysis authorized by *Carella* is "wholly unlike the typical form of [harmless-error] analysis." *Id.* (Scalia, J., concurring in the judgment). Typical harmless-error analysis involves assessing the prejudicial impact of a particular error in light of the whole record. *United States v. Hasting*, 461 U.S. 499, 509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983). Justice Scalia explained that *Carella* does not authorize such review of a mandatory presumption concerning an element of the charged crime.[4] 491 U.S. at 267, 109 S.Ct. at 2421. To consider the trial record as a whole *"would be error." Id.* (emphasis added).

In the present case, proof that Williams concealed, removed, disposed of or converted to his own use or the use of another, property that was pledged as collateral to the FmHA and that Williams did that act knowingly may be some indication that he acted with intent to defraud. It is a far cry, however, from establishing beyond a reasonable doubt Williams' intent to defraud. It simply cannot be said that no rational jury could find these predicate acts but fail to find that Williams acted with intent to defraud. Therefore, under *Carella*, the error here cannot be harmless beyond a reasonable doubt.

The majority, without any explanation, has done precisely what Justice Scalia be-

lieved would be error: it has looked to the evidence in support of its holding that the error was harmless and has concluded "that the jury was able to separate the proof on the various counts of the indictment." The majority is unquestionably correct insofar as the evidence in the case would have supported the verdict if the jury had been properly instructed. But as this Court has stated:

> The Constitution forbids conviction absent proof beyond a reasonable doubt of every fact necessary to constitute the crime. If the sixth amendment right to have a jury decide guilt and innocence means anything, it means that the facts essential to conviction must be proven beyond the jury's reasonable doubt, not beyond ours. A jury verdict, if based on an instruction that allows [the jury] to convict without properly finding the facts supporting each element of the crime, is error. Such error is not corrected merely because an appellate court, upon review, is satisfied that the jury would have found the essential facts had it been properly instructed. *The error cannot be treated as harmless.*

*United States v. Voss*, 787 F.2d 393, 398 (8th Cir.), *cert. denied*, 479 U.S. 888, 107 S.Ct. 286, 93 L.Ed.2d 261 (1986) (citations omitted; emphasis added). "Findings made by a judge cannot cure deficiencies in the jury's findings as to the guilt or innocence of a defendant resulting from the court's failure to instruct it to find an element of the crime." *Cabana v. Bullock*, 474 U.S. 376, 384–85, 106 S.Ct. 689, 696, 88

---

4. Justice Scalia offered a compelling explanation for the extremely limited harmless-error analysis of a mandatory conclusive presumption of an element of a crime. This kind of error both conflicts with the overriding presumption of innocence and invades the fact-finding function of the jury. 491 U.S. at 268, 109 S.Ct. at 2422.

> The constitutional right to a jury trial embodies "a profound judgment about the way in which law should be enforced and justice administered." It is a structural guarantee that "reflect[s] a fundamental decision about the exercise of official power—a reluctance to

entrust plenary powers over the life and liberty to one judge or to a group of judges." A defendant may assuredly insist upon observance of this guarantee even when the evidence against him is so overwhelming as to establish guilt beyond a reasonable doubt. In other words, "the question is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury according to the procedure and standards appropriate for criminal trials." ... *These principles necessarily circumscribe the availability of harmless-error analysis when a jury has been instructed to apply a conclusive presumption. Id.* (emphasis added).

L.Ed.2d 704 (1986). Thus, Justice Scalia's explanation of the extraordinarily limited scope of the harmless-error analysis adopted in *Carella* is consistent with binding precedent of both this Circuit and the Supreme Court.

Similarly, the majority's reference to other instructions and to the jury's notes obscures the proper focus.[5] Even though the phrase "intent to defraud" appears in the name of the crime and Instructions 12 and 13 discuss intent, *specific intent to defraud* does not appear in the verdict directing instruction as an element of the offense. The district court acknowledged that fact. April Tr. at 229. None of the instructions required the jury to find specific intent to defraud in order to convict, even though violation of section 658 is a specific intent offense. Nothing in Instructions 12 or 13 cures that fatal defect.

The majority next states that "the jury made clear that it understood that intent to defraud was an essential element of the crime by asking the court to define the term." Whether the jury asked the court to define intent to defraud is debatable, but what the jury's note said is a matter of record. The note stated:

All counts saying that he's guilty from evidence that we've seen, but not guilty as charged of criminal intent.

Even if this note indicated that the jury had some remarkable intuition that proof of specific intent was required, the district court emphatically reassured the jury that this was not the case. The court, without qualification, told the jury that "Instruction number eleven contains the elements of the charges."

The jury sent a second note asking, "Could one of our jurors talk to the judge concerning criminal intent?" Over Williams' objection, the court responded, "Instruction No. 11 defines intent to de-

fraud. I cannot speak with any juror about the matter." Instruction 11 did not define intent to defraud, nor did it even purport to do so. The district court's response to this note was, therefore, clearly erroneous.[6]

Both of the notes to the jury were answered incorrectly, and there is nothing in the record that indicates that the jury understood that specific intent to defraud was an essential element of the crime. In fact, the jury's convictions on six counts, despite its belief that Williams was "not guilty as charged of criminal intent," makes it obvious that the jury did *not* understand that it was required to find an intent to defraud. Instruction 11 and the court's instructions in response to the jury's notes stripped Williams of his sixth amendment right to have the jury determine whether he acted with intent to defraud.

## CONCLUSION

In summary, even disregarding *Carella*, the error here was not harmless. The case turned on whether Williams intended to defraud the government, but the instructions did not require the jury to find that Williams possessed an intent to defraud anyone. Neither the court nor the lawyers clearly understood the intent to defraud element. The jury's notes demonstrate that it was struggling with the issue of intent, and the district court not only failed to enlighten the jury, it erroneously instructed the jury that Instruction 11 defined intent to defraud. The jury's own statement that Williams was "not guilty as charged of criminal intent" makes it clear that the error here was far from harmless under any meaningful interpretation of that standard. The six fraud convictions should be reversed. This would moot Williams' double jeopardy challenge to his jury tampering convictions and permit re-

---

5. The reference to Instructions 12 and 13 seems to be a suggestion that the instructions "as a whole" were not erroneous, though the majority concedes that Instruction 11 was indeed erroneous.

6. As I have noted, *supra* n. 2 and accompanying text, this response in effect created a mandatory conclusive presumption for the jury that proof of the two elements in Instruction 11 constituted proof of intent to defraud as a matter of law.

mand for sentencing on those convictions.[7]

**7.** This disposition would also moot Williams' contention that the district court erred in excluding the testimony of four lawyers who represented Williams in civil litigation against the FmHA. This testimony purportedly would have supported Williams' good faith defense. If the fraud case were remanded, the district court would need to reconsider this ruling in light of *Cheek v. United States,* —— U.S. ——, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991).