**UNITED STATES of America, Appellee,**

v.

**Dennis R. DINGES, Appellant.**

No. 90–1559.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 27, 1990.

Decided Oct. 30, 1990.

Rehearing Denied Dec. 14, 1990.

Gerald M. Dunne, St. Louis, Mo., for appellant.

Dean Hoag, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before McMILLIAN, WOLLMAN and BEAM, Circuit Judges.

McMILLIAN, Circuit Judge.

Dennis R. Dinges appeals from a final judgment entered in the District Court[1] for the Eastern District of Missouri finding him guilty, pursuant to a guilty plea, of being an unlawful user of marijuana in possession of firearms in violation of 18 U.S.C. § 922(g)(3). The district court sentenced him to 7 months imprisonment, 3 years supervised release, a fine of $3,000.00, and a special assessment of $50.00. For reversal Dinges argues the district court erred in refusing to make a downward adjustment under Guidelines § 2K2.1(b)(1) because the firearms he possessed had an intended lawful use, that is, for sporting or recreational purposes or for collection. For the reasons discussed below, we affirm the judgment of the district court.

BACKGROUND FACTS

According to the presentence report (PSR), Dinges was the driver of a car involved in an accident in Shannon County, Missouri, on May 11, 1989. When state highway patrol troopers arrived, Dinges was trapped in his car. In order to remove him from the car, the troopers had to move several items in the car, including 5 coils of explosive blasting fuse. The troopers then searched the car and found a Remington 12–gauge semi-automatic shotgun, a Poly–Technologies AKS–762 semi-automatic 39 mm rifle, a Smith & Wesson .41 magnum pistol, an Iver Johnson .22 caliber semi-automatic pistol, a Smith & Wesson .22 caliber semi-automatic pistol, three magazines with 30 rounds each for the AKS–762, and a bandolier and 36 rounds of ammunition for the shotgun. All the guns were loaded. Also seized were 38.6 grams of marijuana, one dose of LSD, and an undetermined quantity of methamphetamine. Dinges tested positive for carboxyl-THC, indicating that he was under the influence of marijuana at the time of the accident.

Troopers also noticed a car parked near the accident. Lonnie Wilson was the driver

and two of Dinges's friends were inside. The troopers searched this car and found 55½ sticks of dynamite, 850 meters of safety fuse, a box of blasting caps, and various firearms. According to Wilson, the dynamite belonged to Dinges.

Dinges was hospitalized briefly and then held in custody in the Shannon County jail. On May 12, 1989, he was interviewed by agents of the Bureau of Alcohol, Tobacco and Firearms (ATF) at the jail. Dinges admitted owning the firearms and dynamite. He stated that he had used the dynamite to blow up tree stumps on his farm, but a search by federal and local authorities found no evidence there of any dynamiting. Dinges was released on bond on May 15, 1989.

On the morning of September 12, 1989, an ATF special agent was contacted by an associate of Dinges. This individual stated that Dinges wanted to buy hand grenades to murder the sheriff of Shannon County. This individual wore an electronic transmitting device to a meeting with Dinges on September 13. At this meeting Dinges repeated his interest in purchasing grenades to kill the county sheriff but stated he did not have the cash to buy them at that time and that he was not in a hurry. On September 15, 1989, an undercover agent offered to sell Dinges hand grenades, but Dinges said he needed more time to get the money. The undercover agent then arrested Dinges.

Dinges was indicted for being an unlawful user of marijuana in possession of firearms in violation of 18 U.S.C. § 922(g)(3). He pleaded guilty. The PSR established a base offense level of 9 under Guidelines § 2K2.1(a)[2] and recommended a 2 point reduction for acceptance of responsibility under Guidelines § 3E1.1. Dinges objected that, under Guidelines § 2K2.1(b)(1), the base offense level should be reduced to 6 because he had possessed the firearms for lawful sporting purposes or for collection.[3]

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

2. Effective November 1, 1989, this guideline was amended to establish a base offense level of 12.

3. Before November 1, 1989, this guideline provided for a 4 point reduction from the base

At the sentencing hearing Dinges noted that the PSR had focused on the AKS–762 assault rifle and had recommended no downward adjustment under Guideline § 2K2.1(b)(1) because, based on an ATF ruling banning the importation of assault rifles, such weapons had no sporting purposes. Dinges disputed the relevance of the ATF ban and argued alternatively that the ATF ban made the assault rifle a collector's item. The district court rejected these objections and found Dinges's total offense level to be 7 and his criminal history category was I. The applicable guideline sentencing range was 1–7 months. The district court sentenced Dinges to 7 months imprisonment, 3 years supervised release, a fine of $3,000.00, and a special assessment of $50.00. This appeal followed.

## DOWNWARD DEPARTURE

■ The government argues Dinges is improperly seeking appellate review of the district court's refusal to grant him a downward departure. The government argues correctly that the refusal to grant a downward departure is not appealable by a defendant and is nonreviewable on appeal. *See, e.g., United States v. Evidente*, 894 F.2d 1000, 1003–05 (8th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990). However, the present appeal does not involve the refusal to grant a downward departure. At issue in the present case is the refusal to grant a downward adjustment, or reduction, in the offense level.

## DOWNWARD ADJUSTMENT

■ Dinges first argues the district court erred in placing on him the burden of proof on the issue whether he possessed the firearms for sporting or recreational

purposes or for collection under Guidelines § 2K2.1(b)(1). We disagree. "The guidelines contemplate that the government has the burden of proving the applicability of sections which would enhance the offense level and the defendant has the burden of proving the applicability of guideline sections which would reduce the offense level." *United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir.1989) (reduction for acceptance of responsibility under Guidelines § 3E1.1); *see also United States v. Kirk*, 894 F.2d 1162, 1164 (10th Cir.1990) (reduction under Guidelines § 2K2.1(b)(1); preponderance of evidence standard of proof); *United States v. Urrego–Linares*, 879 F.2d 1234, 1239 (4th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 346, 107 L.Ed.2d 334 (1989).

■ On the merits, Dinges argues the district court erred in finding that the assault rifle had no sporting purposes on the basis of the ATF ban. Alternatively, Dinges argues the district court erred in failing to find that the assault rifle was a collector's item in light of the ATF ban. We disagree. Here, the district court found that Dinges was not entitled to a downward adjustment because he possessed the assault rifle for neither sporting purposes nor as a collector's item. We accept such a finding of fact unless it is clearly erroneous. 18 U.S.C. § 3742(e). Application note 2 to Guidelines § 2K2.1 states that the surrounding circumstances should be considered in determining whether the defendant possessed the firearms solely for sporting purposes or for collection.[4] Although Dinges's offense occurred before the ATF ban of assault rifles was effective, the ATF ban is relevant to a determination of the firearm's intended use. In addition, the number and type of firearms, the quantity of ammunition, and the presence of

---

offense level of 9. As amended, the guideline provides for a reduction to level 6. Dinges's objection appears to have been based upon the amended guideline.

4. Guidelines § 2K2.1, application note 1 (now renumbered as application note 2 in the amended Guidelines) provides:

Under § 2K2.1(b)(1), intended lawful use, as determined by the surrounding circumstances, provides a decrease in the offense

level. Relevant circumstances include, among others, the number and type of firearms (sawed-off shotguns, for example, have few legitimate uses) and ammunition, the location and circumstances of possession, the nature of the defendant's criminal history (*e.g.*, whether involving firearms), and the extent to which possession is restricted by local law.

**1136**

explosives strongly support the district court's inference that at the time of the car accident Dinges and his friends were not on an ordinary hunting trip and refute Dinges's claim that he possessed the firearms as collector's items. *See United States v. Kirk,* 894 F.2d at 1164 (sawed-off shotguns not ordinarily considered collectibles or type of gun mounted for decoration; shotgun concealed in drawer of cabinet and was not mounted).

Accordingly, we affirm the judgment of the district court.