**UNITED STATES of America, Appellee,**

**v.**

**Joseph Michael LINCOLN, a/k/a Mohammed Ali Ballagh Omer, Appellant.**

**No. 91–1506.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 18, 1991.

Decided Feb. 24, 1992.

Andrew H. Mohring, Minneapolis, Minn., argued, for appellant.

Lynn A. Zentner, Minneapolis, Minn., argued, for appellee.

Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Joseph Lincoln appeals the sentence he received after pleading guilty to suborning perjury in violation of 18 U.S.C. § 1622 (1988). Lincoln presents three issues for our review. First, he contends the District Court[1] erroneously refused to "group" this conviction with an antecedent conviction for mail fraud. Second, he claims the District Court erred in ordering that his sentence run consecutively to the sentences imposed for his mail fraud conviction and a related arson conviction. Finally, he claims the District Court incorrectly attributed leadership points for the instant offense and erroneously refused to credit him for acceptance of criminal responsibility. We affirm.

## I

In September 1989, a grand jury indicted Lincoln on one count of arson of a building employed in interstate commerce in violation of 18 U.S.C. § 844(i) (1988) and one count of using the United States mails as part of a scheme to defraud in violation of 18 U.S.C. § 1341 (1988). A jury convicted him of both offenses.[2] Lincoln's arson offense was committed prior to the effective date of the United States Sentencing Guidelines: he received a ten-year sentence under pre-guidelines law. Lincoln's mail-fraud offense was committed after the guidelines' effective date: He received a twenty-one month sentence for this crime under the guidelines.

After he was convicted of these offenses the government began to investigate the possibility that some of Lincoln's witnesses had perjured themselves. As a result of this investigation Lincoln was indicted on four counts of suborning perjury in violation of 18 U.S.C. § 1622 and one count of procuring the unavailability of a witness in violation of 18 U.S.C. § 1512(b)(1) (1988). On October 12, 1990, Lincoln pleaded guilty to one count of suborning perjury.

In determining Lincoln's sentence on the conviction for suborning perjury, the District Court assessed a base offense level of twelve pursuant to U.S.S.G. § 2J1.3 (Nov. 1990). Because Lincoln committed this offense while upon release pending his trial on the arson and mail-fraud charges, the court added three levels under U.S.S.G. § 2J1.7 (Nov.1990). Because the court found Lincoln had led or managed the offense, it assigned him two additional levels under U.S.S.G. § 3B1.1(c) (Nov.1990). After the court denied Lincoln a two-level reduction for acceptance of criminal responsibility, it found his arson and mail-fraud convictions gave him three criminal history points, thereby putting him in

---

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

2. This Court affirmed those convictions. *See United States v. Lincoln,* 925 F.2d 255 (8th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2838, 115 L.Ed.2d 1006 (1991).

guideline Category II. These rulings resulted in a total offense level of seventeen and a guidelines sentencing range of twenty-seven to thirty-three months. The District Court imposed a thirty-three month sentence because of what it considered to be the "seriousness of the defendant's conduct." Statement of Reasons for Imposing Sentence, *reproduced at* Appellant's Addendum at D4, and ordered this sentence to run consecutively to Lincoln's arson and mail fraud sentences.

## II

Lincoln complains the District Court erroneously refused to group his conviction for suborning perjury with his previous conviction for mail fraud. His argument relies on three sections of the guidelines. First, Lincoln points out that the commentary to the guideline section applicable to subornation of perjury states:

> In the event that the defendant is convicted under this section as well as for the underlying offense (*i.e.*, the offense with respect to which he committed perjury), *see* the Commentary to Chapter Three, Part C (Obstruction), and to § 3D1.2(c) (Groups of Closely Related Counts).

U.S.S.G. § 2J1.3, comment. (n. 3) (Nov. 1990). The commentary to guidelines Chapter Three, Part C says:

> [w]here the defendant is convicted both of the obstruction offense and the underlying offense, the count for the obstruction offense will be grouped with the

count for the underlying offense under subsection (c) of § 3D1.2 (Groups of Closely–Related Counts). The offense level for that group of closely-related counts will be the offense level for the underlying offense increased by the 2–level adjustment specified by this section, or the offense level for the obstruction offense, whichever is greater.

U.S.S.G. § 3C1.1, comment. (n. 6) (Nov. 1990). Subsection (c) of U.S.S.G. § 3D1.2 provides that:

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:
>
> \*   \*   \*   \*   \*   \*
>
> (c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

U.S.S.G. § 3D1.2 (Nov.1990). Lincoln claims these provisions require that his subornation and mail-fraud convictions be grouped.[3] He argues that because the offense level attributed to his subornation offense is greater than the level calculated for his mail-fraud offense, and because neither sentence accounted for the guidelines' grouping principles, the proper penalty for the instant offense is the difference between his mail-fraud sentence and the sentence the guidelines would have imposed had his mail-fraud and subornation sentences been grouped. Because the District

---

**3.** Lincoln also cites U.S.S.G. § 5G1.3 (Nov.1991). Among other things, this provision requires that when a sentence is imposed on a defendant who currently is serving an undischarged term of imprisonment that resulted from a federal offense and was imposed under the guidelines: "[T]he sentence for the instant offense shall . . . result in a combined sentence equal to the total punishment that would have been imposed under § 5G1.2 . . . had all the sentences been imposed at the same time." U.S.S.G. § 5G1.3(b) (Nov.1991). Guideline § 5G1.2(b) (Nov.1991) provides that "[e]xcept as otherwise required . . . the sentence imposed on each other count shall be the total punishment as determined in accordance with Part D of Chapter Three. . . ." The amended section 5G1.3 is irrelevant because it took effect after Lincoln was sentenced

in March 1991. *See* U.S.S.G.App. C, amendment 385 ("The effective date of this amendment is November 1, 1991."). This appeal is governed by the guidelines in effect when Lincoln was sentenced, which are contained in the November 1, 1990 version of the *Guidelines Manual. See, e.g., United States v. Dortch,* 923 F.2d 629, 632 n. 2 (8th Cir.1991); *United States v. Lawrence,* 918 F.2d 68, 72 n. 1 (8th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1399, 113 L.Ed.2d 455 (1991); *United States v. Lawrence,* 915 F.2d 402, 405 n. 4 (8th Cir.1990) (all holding guidelines in effect at date of sentencing control); *cf. United States v. Swanger,* 919 F.2d 94, 95 (8th Cir.1990) (imposition of greater offense level under amendments effective after date of defendants' crimes violated *ex post facto* prohibition).

Court's contrary decision calls upon us to determine the proper construction of the relevant guidelines, our review is *de novo*. *United States v. West*, 942 F.2d 528, 530 (8th Cir.1991); *United States v. Werlinger*, 894 F.2d 1015, 1016 (8th Cir.1990).

In addition to the guidelines and commentary relied upon by Lincoln, relevant authority is provided by two recent decisions of this Court. In *United States v. Williams*, 935 F.2d 1531 (8th Cir.1991), *cert. denied* —— U.S. ——, 112 S.Ct. 1189, 117 L.Ed.2d 431 (1991) *and* —— U.S. ——, 112 S.Ct. 1189, 117 L.Ed.2d 431 (1991), the defendant was tried on six counts of selling collateral pledged to the Farmers's Home Administration. During his first trial Williams engaged an acquaintance to influence the jurors. A mistrial was declared when the jurors informed the court of these contacts, and a second trial produced convictions on several counts. At sentencing, Williams's base offense level was adjusted by two levels for obstruction of justice. Williams was subsequently tried and convicted for jury tampering. *Id.* at 1533–34. The court meted out a thirty-seven month sentence and then "voided" all but four months on the ground that since Williams had already received an offense-level adjustment for obstruction of justice in the previous case, the imposition of an additional penalty would violate the fifth amendment's prohibition of double jeopardy. *Id.* at 1533, 1538.

This Court held that sentencing Williams for jury tampering would not transgress the fifth amendment,[4] *id.* at 1538, and then discussed the proper calculation of Williams's sentence on remand:

"Subsection (c) [of § 3D1.2] provides that when conduct that represents a separate count, *e.g.*, bodily injury or *obstruction of justice*, is also a specific offense char-

acteristic in or other adjustment to another count, the count represented by that conduct is to be grouped with the count to which it constitutes an aggravating factor. This provision prevents 'double counting' of offense behavior." *Williams*, 935 F.2d at 1538 (quoting U.S.S.G. § 3D1.2, comment. (n. 5)) (emphasis in original). The panel concluded the guidelines "call[ed] for the 'grouping' of the [collateral-selling] case and the jury tampering case. The offense levels of the two cases should have been compared ... [and] the highest of these ... is the offense level which should have been assessed on the 'group.' " *Id.* at 1539.

In *United States v. Hankins*, 931 F.2d 1256 (8th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 243, 116 L.Ed.2d 198 (1991), the defendant escaped after he was arrested for bank robbery. He later was apprehended and convicted in a single trial on charges of bank robbery and escape. In determining Hankins's sentence for his bank robbery conviction, the district court treated Hankins's escape as an obstruction of justice and adjusted the offense level for the bank robbery upward by two levels under § 3C1.1 (Nov.1989), and then imposed an additional sentence for the escape conviction. In other words, the two convictions were not grouped for sentencing purposes.

After rejecting Hankins's argument that Application Note 4 to § 3C1.1 prohibited using his escape to adjust the offense level for his bank robbery sentence, the *Hankins* panel noted that U.S.S.G. § 3D1.2(c) (Nov.1989) and its commentary required grouping of counts when " 'one of the counts embodies conduct that is treated as ... [an] *adjustment to,* the guideline applicable to another of the counts.' " *Hankins*, 931 F.2d at 1265 (quoting U.S.S.G. § 3D1.2(c) (Nov.1989) (emphasis by *Hankins* panel). The panel went on to state

---

**4.** Other circuits have reached similar conclusions. *See United States v. Troxell*, 887 F.2d 830, 834 (7th Cir.1989) *and United States v. Carey*, 943 F.2d 44, 46–47 (11th Cir.1991) (both holding that increase of base offense level due to defendant's failure to appear, followed by defendant's trial and sentencing for failure to

appear, did not violate the fifth amendment); *cf. United States v. Nelson*, 919 F.2d 1381 (9th Cir.1990) (holding dismissal of charges under Fed.R.Crim.P. 29 did not prevent court from using the seriousness of the dismissed charges to increase defendant's sentence for failing to appear).

that as the escape had been used to adjust the bank-robbery sentence, the "district court should have grouped the bank robbery and escape counts according to § 3D1.2 and the other applicable multiple counts provisions." *Id.* at 1265. The panel remanded with instructions to group Hankins's escape and bank robbery convictions. *Id.* at 1266.

*Williams* and *Hankins* show beyond question that an obstruction offense [5] may be grouped with another offense if the former represented an attempt to impede the course of justice in the latter. *Williams* particularly demonstrates the flaw in the government's argument before the District Court that because 18 U.S.C. § 3147 (1988) requires an enhanced sentence for a crime committed on release to be "consecutive to any other sentence of imprisonment," *id.*, his subornation sentence falls under U.S.S.G. § 3D1.1(b) (Nov. 1990), which provides that "[a]ny count for which the statute mandates imposition of a consecutive sentence is excluded from the operation" of the grouping rules. *Id.* Unlike the offense-specific punishments contained in statutes such as 18 U.S.C. § 924(e)(1) (1988), the penalty established by 18 U.S.C. § 3147 applies to all offenses committed on release and merely requires a consecutively-served enhancement to the sentence for those offenses. *See* 18 U.S.C. § 3147 (stating its penalties apply "in addition to the sentence prescribed for the offense"); *Williams*, 935 F.2d at 1533 n. 2 (noting the statute is only an "enhancement" to the guidelines sentence). Because the exclusionary provision of U.S.S.G. § 3D1.1(b) (Nov.1990) only applies to statutory punishments for specific criminal acts, *see id.*, comment (n. 1) (discussing the subsection's scope), it does not bar the application of grouping rules to an offense subject to 18 U.S.C. § 3147 (1988). *See Williams*, 935 F.2d at 1533 n. 2, 1538–39 (requiring grouping of an obstruction offense committed on release with related offense); U.S.S.G. § 2J1.7, comment. (backg'd). (Nov.1990) (stating, in context

of enhancement for offenses on release, that guidelines prohibiting the "grouping of counts of conviction requiring consecutive sentences ... do not apply to this section because 18 U.S.C. § 3147 is an enhancement, *not a count of conviction.*").

Here, the District Court declined to group Lincoln's convictions because it construed the guidelines to require grouping only for convictions that resulted from a consolidated trial or for separately-tried convictions that were consolidated for sentencing. This description of the guidelines is correct. *See e.g.,* U.S.S.G. § 5G1.2, comment. (Nov.1990) (stating guidelines' multiple-count sentencing rules, which include the grouping provisions, apply only to "counts of conviction (1) contained in the same indictment or information, or (2) contained in different indictments or informations for which sentences are to be imposed at the same time or in a consolidated proceeding"). However, *Williams's* application of the grouping rules to unconsolidated cases leaves no doubt that, in this circuit, if an obstruction offense has been used to adjust the sentence for a related offense, then in sentencing for the obstruction offense the court is required to group that offense with the related offense even when the two were separately charged and separately tried and are being separately sentenced.

Although the District Court based its decision not to group Lincoln's offenses on a ground foreclosed by *Williams*, we may affirm on any ground supported by the record even if that ground was not relied upon by the District Court. *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 74, 112 L.Ed.2d 48 (1990). Lincoln's argument, as noted earlier in this opinion, is based on a chain of references in the guidelines. The subornation guideline refers to Chapter Three, Part C and U.S.S.G. § 3D1.2(c). Guidelines Chapter Three, Part C also refers to U.S.S.G. § 3D1.2(c), which discusses

---

5. A non-exhaustive list of obstructive conduct is given by U.S.S.G. § 3C1.1, comment. (n. 3) (Nov.1990). This list includes "committing, su-

borning, or attempting to suborn perjury." U.S.S.G. § 3C1.1, comment. (n. 3) (Nov.1990).

the criteria under which offenses are grouped. An examination of this chain of references in light of *Williams* and *Hankins* discloses a solid ground in support of the District Court's ruling.

This ground is found in the language of U.S.S.G. § 3D1.2(c) (Nov.1990). Lincoln correctly points out that both the commentary to the perjury guideline and to Chapter Three, Part C, of the *Guidelines Manual* tie the application of grouping rules to the fact of the defendant's convictions. *See* U.S.S.G. § 2J1.3, comment. (n. 3) (Nov.1990) (the sentencing court will refer to Chapter Three, Part C and U.S.S.G. § 3D1.2(c) "[i]n the event that the defendant is convicted under this section as well as for the.... offense with respect to which he committed perjury"); U.S.S.G. § 3C1.1, comment. (n. 6) (Nov.1990) (grouping occurs under § 3D1.2(c) when "the defendant is convicted both of the obstruction offense and the underlying offense"). Section 3D1.2(c), however, groups offenses only when one of them "embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." U.S.S.G. § 3D1.2(c) (Nov.1990). Both the commentary to U.S.S.G. § 3D1.2(c) and cases construing the guideline show that its purpose is to prevent the "double counting of offense behavior." U.S.S.G. § 3D1.2, comment. (n. 5) (Nov. 1990); *see Williams*, 935 F.2d at 1538 (discussing basic guidelines policy against double-counting as represented by U.S.S.G. § 3D1.2(c)); *Hankins*, 931 F.2d at 1265 (U.S.S.G. § 3D1.2(c) represents the guidelines' policy against double-counting); *United States v. Shaw*, 883 F.2d 10, 12 (5th Cir.1989) (holding U.S.S.G. § 3D1.2(c) "recognize[s] the potential for 'double counting' in certain cases and provide[s] specific admonition[ ] to avoid it"); *cf. United States v. Nelson*, 919 F.2d 1381, 1384 (9th Cir. 1990) ("[T]he rules for grouping of offenses were included in part to 'prevent multiple punishment for substantially identical offense conduct.') (quoting U.S.S.G., Chapter 3, Part. D, intro. comment.).

■ The guidelines' discussions of "double counting" indicate that the phenomenon occurs when one instance or aspect of a defendant's conduct forms the basis for a conviction and resulting sentence and is also employed to adjust one or more other sentences.[6] Consequently, *Williams* and *Hankins* required grouping under U.S.S.G. § 3D1.2(c) because in each case the defendant's obstructive conduct had formed the basis for one sentence and also had been used by the sentencing court to adjust the sentence for another conviction. *Williams*, 935 F.2d at 1534, 1539; *Hankins*, 931 F.2d at 1265. A particular passage from *Hankins* is illustrative:

---

**6.** *See* U.S.S.G. § 1B1.3, comment. (backg'd). (Nov.1990) (stating, in context of discussing § 1B1.3(a)(2), which requires aggregation of acts or omissions involved in offenses that must be grouped under § 3D1.2(d), that when the grouping rule "does not apply, so that convictions on multiple counts are considered separately in determining the guideline sentencing range, the guidelines prohibit aggregation of quantities from other counts in order to prevent 'double counting' of the conduct and harm from each count of conviction."); U.S.S.G. § 2K2.4, comment. (backg'd) (Nov.1990) (the guideline applies to violations of statutes that "provide mandatory minimum penalties for the conduct proscribed," and stating that "[t]o avoid double counting, when a sentence under this section is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for firearm discharge, use, or possession is not applied in respect to such underlying offense."); U.S.S.G. § 3D1.1, comment. (n. 1) (Nov.1990) ("Convictions on [counts for which a

statute mandates imposition of a consecutive sentence] are not used in the determination of a combined offense level ... but may affect the offense level for other counts. A conviction for ... [the] ... use of firearm in commission of a crime of violence[ ] provides a common example. In the case of [such] a conviction ... the specific offense characteristic for weapon use in the primary offense is to be disregarded to avoid double counting.... *Example:* The defendant is convicted of one count of bank robbery ... and one count of use of a firearm in the commission of a crime of violence.... the offense level for the bank robbery count is computed without application of an enhancement for weapon possession or use.") (emphasis original); U.S.S.G. § 3D1.2, comment. (n. 5) (Nov.1990) (stating § 3D1.2(c) "prevents 'double counting' of offense behavior" by grouping certain offenses, and further stating, by way of example, that the "use of a firearm in a bank robbery and unlawful possession of a firearm are sufficiently related to warrant grouping.").

Hankins's conduct in escaping from custody surely warrants a § 3C1.1 enhancement to his bank robbery offense. The district court was correct in applying this guideline provision. *Indeed, absent the complicating factor of Hankins's conviction for the offense of escape, the issue would likely not be appealed.* ...

\* \* \* \* \* \*

The probation officer did not group Hankins's bank robbery and escape counts, apparently because the bank robbery offense did not include an enhancement for the escape. *However, when the district court adjusted Hankins's bank robbery offense level pursuant to § 3C1.1, the escape count then embodied conduct that was treated as an adjustment to the bank robbery count. After this adjustment, the district court should have grouped the bank robbery and escape counts* ...

*Hankins,* 931 F.2d at 1264 (emphasis supplied). The emphasized language shows that had the district court not used Hankins's obstructive conduct to adjust the bank robbery sentence there would have been no double-counting difficulty and no requirement for grouping under § 3D1.2(c). It is in this sense that § 3D1.2(c) must be understood; when the guideline requires the grouping of counts, one of which "embodies conduct that *is treated* as ... [an] adjustment to, the guideline applicable to another of the counts," U.S.S.G. § 3D1.2(c) (Nov.1990) (emphasis supplied), it establishes a rule whose applicability depends on the actual treatment given to the defendant's conduct by the sentencing court.

■ In this case, the record of Lincoln's sentencing on the mail-fraud charge shows he did not receive an obstruction adjustment. Indeed, the sentencing court struck information relating to Lincoln's subornation of perjury from the presentence report with respect to his mail fraud conviction. Consequently, Lincoln's obstruction of justice was not doubly-counted, and does not fall within the purview of U.S.S.G. § 3D1.2(c) (Nov.1990). *Williams,* 935 F.2d at 1534, 1538; *Hankins,* 931 F.2d at 1264; U.S.S.G. § 3D1.2(c) (Nov.1990).

Lincoln objects that this result "will lead to radically different sentences in otherwise identical cases simply because of a prosecutorial decision" to seek separate trials and sentences for obstruction and other offenses. Brief of Appellant, p. 8. We fail to see how the proper application U.S.S.G. § 3D1.2(c) will result in deviation in this case from the sentencing ranges Congress has determined appropriate for obstruction of justice. Section 3D1.2(c) permits a court to remove prosecutorial discretion in this area by adding an obstruction adjustment to the sentence on the related offense if the adjustment is supported by the facts. *See United States v. Duke,* 935 F.2d 161, 162 (8th Cir.1991) ("The District Court ... is given broad discretion to apply [U.S.S.G. §] 3C1.1 to a wide range of conduct.").

Finally, we see no unfairness in whatever prosecutorial discretion was exercised in this case, as Lincoln's clandestine attempt at sabotaging his arson and mail-fraud trial had been investigated only partially when he was sentenced for those offenses. That the sentencing court declined to add an obstruction adjustment on the basis of information from this nascent inquiry provides no justification for grouping his mail fraud and subornation of perjury convictions for sentencing purposes. As the government points out, "Lincoln created the very situation about which he now complains." Brief of United States, p. 9. We therefore conclude the District Court did not err by refusing to group these offenses under U.S.S.G. § 3D1.2(c) (Nov.1990).

III

Lincoln also complains the District Court erred by making his subornation sentence run consecutively to his previously-imposed arson and mail-fraud sentences. His argument requires us to return to 18 U.S.C. § 3147, which states in pertinent part:

A person convicted of an offense committed while released ... shall be sentenced, in addition to the sentence prescribed for the offense to—

1) a term of imprisonment of not more than ten years if the offense is a felony....

\* \* \* \* \* \*

A term of imprisonment imposed under this section shall be consecutive to any other sentence of imprisonment.

18 U.S.C. § 3147. Lincoln contends this statute must be interpreted in light of the commentary to U.S.S.G. § 2J1.7 (Nov.1990). That guideline, which was applied in this case, provides for a three-level upward adjustment for offenses committed on release. Application Note 2 to the guideline states:

> Under 18 U.S.C. § 3147, a sentence of imprisonment must be imposed in addition to the sentence for the underlying offense, and the sentence of imprisonment imposed under 18 U.S.C. § 3147 must run consecutively to any other sentence of imprisonment. Therefore, the court, in order to comply with the statute, should divide the sentence on the judgment form between the sentence attributable to the underlying offense and the sentence attributable to the enhancement. The court will have to ensure that the 'total punishment' (*i.e.*, the sentence for the offense committed while on release plus the sentence enhancement under 18 U.S.C. § 3147) is in accord with the guideline range for the offense committed while on release, as adjusted by the enhancement in this section.

U.S.S.G. § 2J1.7, comment (n. 2) (Nov. 1990). Lincoln contends the juxtaposition of the guideline, the statute, and the relevant cases indicate that "only the portion of [his] sentence attributable" to the three-level enhancement required by U.S.S.G. § 2J1.7 (Nov.1990) may be consecutive to his previously-imposed arson and mail-fraud sentences.[7] Brief of Appellant, p. 12. As this argument also requires us to inter-pret the guidelines and the relevant statute, our review once again is *de novo. West,* 942 F.2d at 530; *Werlinger,* 894 F.2d at 1016.

██ We begin by repeating that 18 U.S.C. § 3147 does not create an offense, but merely requires an addition to the sentence for an offense the defendant committed on release. *United States v. Sink,* 851 F.2d 1120, 1121 (8th Cir.1988) (per curiam), *cert. denied,* 488 U.S. 1012, 109 S.Ct. 800, 102 L.Ed.2d 791 (1989); *United States v. Feldhacker,* 849 F.2d 293, 299 (8th Cir. 1988). Although this enhancement is mandatory, Congress has authorized the United States Sentencing Commission to promulgate U.S.S.G. § 2J1.7 (Nov.1990), which was "drafted to enable the court[s] to determine and implement a combined 'total punishment' consistent with the overall structure of the guidelines, while at the same time complying with" § 3147. U.S.S.G. § 2J1.7, comment. (backg'd) (Nov.1990).

Under the approach taken by the guidelines, the sentence for one or more offenses committed on release is to be computed as would any other sentence, with the exception of a three-level enhancement to the base offense level under U.S.S.G. § 2J1.7 (Nov.1990). This three-level enhancement satisfies the enhancement requirement of 18 U.S.C. § 3147; as the statute does not require a minimum enhancement term, whatever enhancement results from the three-level upward adjustment satisfies the statute's requirement. The punishment thus computed is the " 'total punishment' ... *i.e.,* the sentence for the offense committed while on release plus the sentence enhancement under 18 U.S.C. § 3147." U.S.S.G. § 2J1.7, comment. (n. 2) (Nov. 1990). After determining the total punishment, the sentencing court should make a notation on the judgment form separating

---

**7.** We note that in furtherance of his argument Lincoln has submitted an unpublished decision in an unrelated case adjudicated by the United States District Court for the Southern District of New York. We direct Lincoln's attention to 8th Cir.R. 28A(k):

> **Citation of Unpublished Opinion.** No party may cite a federal or state court opinion not intended for publication, except when the cases are related by identity between the parties or the causes of action.

*Id.* The rule precludes reliance in appellate argument on unpublished opinions in unrelated cases, and its exceptions do not include the appendage of a copy of the unpublished opinion. Accordingly, we do not consider this case.

the sentence into the amount of time attributable to all the applicable guidelines *except* § 2J1.7's three-level enhancement and the amount of time attributable to that enhancement. The court then should order that the latter amount be served consecutively to the former. "For example, if the applicable adjusted guideline range is 30–37 months and the court determines 'total punishment' of 36 months is appropriate, a sentence of 30 months for the underlying offense plus 6 months under 18 U.S.C. § 3147 would satisfy this requirement." U.S.S.G. § 2J1.7, comment. (n. 2) (Nov. 1990).

■ Lincoln's argument takes the phrase "total punishment" in Application Note 2 to Guidelines § 2J1.7 to include all sentences that have been imposed on the defendant at the time he faces sentencing under U.S.S.G. § 2J1.7 (Nov.1990). This interpretation of the phrase, however, is correct only when the defendant is sentenced for multiple offenses committed on release; when other cases have been consolidated for trial or sentencing with one or more offenses committed on release; or when two or more separate proceedings are grouped under the rule of *Williams* and *Hankins. See* U.S.S.G. § 5G1.2(d) (Nov. 1990) (all sentences for *consolidated offenses* shall be concurrent unless a consecutive sentence is required in order to arrive at the total punishment amount, or unless "otherwise required by law").[8]

■ Lincoln's argument is inapposite in this case, in which the offense committed on release was neither consolidated for trial or sentencing or grouped with the mail fraud offense under the rule of *Williams* and *Hankins.* Consequently, the District Court ruled correctly by requiring Lincoln to serve his subornation sentence consecutively to his arson and mail-fraud sentences, and to serve his enhancement under 18 U.S.C. § 3147 and U.S.S.G. § 2J1.7 (Nov.1990) consecutively to all three sentences. *See, e.g.* 18 U.S.C. § 3584 (1988) ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."); *United States v. Smitherman,* 889 F.2d 189, 191 (8th Cir.1989) (holding it is within the district court's discretion to impose consecutive or concurrent sentences), *cert. denied,* 494 U.S. 1036, 110 S.Ct. 1493, 108 L.Ed.2d 629 (1990).[9]

## IV

■ Lincoln claims the District Court incorrectly found him to have been "an organizer, leader, manager, or supervisor in ... criminal activity," who deserved a two-level increase in his base offense level under U.S.S.G. § 3B1.1(c) (Nov.1990). "We note that U.S.S.G. § 3B1.1, as amplified in the accompanying Commentary, employs a very broad definition of what constitutes a 'leadership and organizational role.'" *United States v. Collar,* 904 F.2d 441, 442 (8th Cir.1990) (quoting U.S.S.G. § 3B1.1,

---

**8.** When one of these situations exists, the guidelines require that consolidated sentences must run concurrently except for enhancements under U.S.S.G. § 2J1.7 and for any sentence that must be consecutively imposed in order to achieve the guidelines' total punishment figure. Because an enhancement for an offense committed on release "shall be consecutive to any other sentence of imprisonment," 18 U.S.C. § 3147 (1988), a defendant may not be permitted to serve the term of such an enhancement concurrently to any other term of imprisonment. Thus, for example, a defendant who is convicted of three offenses committed on release that are combined under one of the above rules may serve all three sentences concurrently, but must serve consecutively each of the three enhancements. When two offenses are combined with an offense committed on release and when one sentence must be, or has been made, consecutive to achieve a total punishment

amount, the defendant may not serve the enhancement at the same time he serves either (i) the concurrent sentences for the offenses or (ii) the sentence made consecutive to achieve the total punishment amount.

**9.** We note that the District Court did not explain its decision to make Lincoln's subornation of perjury sentence consecutive to his previously imposed arson and mail fraud sentences in terms of 18 U.S.C. § 3553(a) (1988). While in doubtful cases a sentencing court's failure to explain its decision might call its evaluation into question, our examination of the record reveals "nothing ... to indicate that the district court erred in imposing consecutive sentences or failed to consider the relevant factors set forth in [18 U.S.C. §] 3553(a)." *Smitherman,* 889 F.2d at 191.

comment (n. 3)). A court considering the propriety of this adjustment should examine facts such as:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, comment (n. 3) (Nov. 1990). The government bears the burden of proving that the defendant's conduct sufficiently displays the badges of leadership or management to warrant this adjustment. *See United States v. Dinges*, 917 F.2d 1133, 1135 (8th Cir.1990) (" 'The guidelines contemplate that the government has the burden of proving the applicability of sections which would enhance the offense level' ") (quoting *United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir.1989)). The sentencing court's finding on this factual issue will not be reversed absent a demonstration of clear error. *United States v. Fuller*, 942 F.2d 454, 458 (8th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 315, 116 L.Ed.2d 257 (1991), *cert. denied* —— U.S. ——, 112 S.Ct. 890, 116 L.Ed.2d 793 (1991).

■ A review of the record discloses ample evidence to support the § 3B1.1(c) enhancement in this case. At Lincoln's sentencing hearing Linda Anderson testified that in December 1989, the month in which Lincoln's trial was scheduled to begin, Lincoln called her to arrange a meeting. The two met at a local restaurant, where Lincoln asked her to lie for him and composed the story she later told the jury. Lincoln arranged a subsequent meeting between Anderson and a detective, and even transported Anderson to this meeting so that she could lie to the detective. Lincoln called Anderson every day after this meeting and the two rehearsed her story "over and over again." Transcript of Evidentiary Hearing & Sentencing, March 8, 1991, p. 20. Anderson testified she never called Lincoln or suggested that they rehearse her story. She told the District Court she

obeyed Lincoln because, as she put it, "He promised a better Christmas for my kids." *Id.* at 21.

The District Court chose to accept Anderson's testimony, which portrays Lincoln as the initiator of this scheme, the composer of Anderson's perjury, and the author of every decision regarding its presentation to law enforcement and the jury. Our review of the record has not left us " 'with the definite and firm conviction that a mistake has been committed.' " *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Therefore, we conclude that the District Court did not commit clear error by increasing Lincoln's offense level under U.S.S.G. § 3B1.1 (Nov.1990).

## V

■ Finally, Lincoln argues that the District Court erroneously refused to give him the benefit of U.S.S.G. § 3E1.1(a) (Nov.1990), which provides for a two-level reduction of a defendant's offense level if he "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." The defendant bears the burden of proving that he is entitled to this reduction. *United States v. Drapeau*, 943 F.2d 27, 28–29 (8th Cir.1991). Because a district court is uniquely able to gauge the sincerity and quality of a defendant's attitude toward his offense, the decision to award or deny this reduction is discretionary and will not be "disturbed unless the judge's decision is without foundation." *United States v. Stuart*, 923 F.2d 607, 613 (8th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 1599, 113 L.Ed.2d 662, —— U.S. ——, 112 S.Ct. 145, 116 L.Ed.2d 111 (1991).

■ When Lincoln pleaded guilty he was questioned about his participation in the offense. He denied having provided Anderson's name to his attorney as a possible witness, and claimed he was unsure about how his attorney came to know of

Anderson. He stated that he did not tell Anderson to perjure herself, and insisted that it was Anderson who suggested the content of her perjury. Lincoln repeatedly said that he merely approved her proposed testimony. When he was asked whether he knew Anderson's trial testimony (which accused an innocent third party of the arson) was true, Lincoln stated, "as far as I know, it's not true." Transcript of Guilty Plea Hearing, October 12, 1990, at 20. Lincoln downplayed his guilt to such an extent that the District Court refused to accept his guilty plea; only after he conferred with counsel did Lincoln admit that he and Anderson combined their efforts to present false testimony.

Although counsel argues that Lincoln repeatedly expressed remorse over his offense, the presentence report does not note any expression of that sentiment. The report only says Lincoln admitted that he and Anderson presented a false story to the jury. The guidelines state that merely admitting the truth of the charge will not automatically qualify a defendant for the reduction at issue. *See* U.S.S.G. § 3E1.1(c) (Nov.1990) ("A defendant who enters a guilty plea is not entitled to" a reduction "as a matter of right."). Nowhere in the record did Lincoln express to the District Court his remorse, or make any acknowledgement that he deserved punishment for his crime. While a guilty plea entered "prior to the commencement of trial combined with truthful admission of involvement in the offense ... will constitute significant evidence of acceptance of responsibility," *id.,* comment. (n. 3), the combination of Lincoln's initial evasiveness with the absence of any expression of remorse or admission of responsibility gives the District Court's decision a foundation that we are not empowered to ignore.

We conclude that all of Lincoln's challenges to his sentence lack merit. Accordingly, the sentence is affirmed.