**UNITED STATES of America, Appellee,**

v.

**Frank J. KISSINGER, Appellant.**

**No. 92-3127.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1993.

Decided March 3, 1993.

---

Wynn A. Gunderson, Rapid City, SD, for appellant.

Steven D. Rich, Asst. U.S. Atty., Rapid City, SD, for appellee.

Before McMILLIAN, MAGILL and LOKEN, Circuit Judges.

McMILLIAN, Circuit Judge.

Frank J. Kissinger appeals from a final judgment entered in the District Court[1] for the District of South Dakota sentencing him to an eight-month split sentence (four months imprisonment and four months home confinement) following his guilty plea to being a narcotics user in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(3), 924(a)(2). For reversal, he argues the district court erred in failing to reduce his offense level under U.S.S.G. § 2K2.1(b)(1) (1990), which provided for reduction in the offense level if the defendant obtained or possessed the firearm "solely for lawful sporting purposes or collection." For the reasons discussed below, we affirm the judgment of the district court.

Kissinger, a Washington State resident, attended a motorcycle rally in Sturgis, South Dakota, in the summer of 1991. While traveling on a highway near Sturgis, he stopped to rest and fell asleep. Officers of the South Dakota Highway Patrol approached Kissinger as he was lying face down on the ground, and they detected an odor of alcoholic beverage. As Kissinger rolled over on his back, his jacket opened and a bag of marijuana was exposed. The officers then searched Kissinger. In addition to the marijuana, they found a knife in one of his boots, and in the other they found a loaded pistol, which was identified as a .357 caliber two-shot derringer. They also found two pipes with burnt residue and four rounds of .357 ammunition.

At his sentencing hearing, Kissinger testified that prior to traveling to South Dakota for the motorcycle rally, he had collected weapons, including the derringer, assault weapons, a black powder muzzle loader, handrifles, and handguns. He testified that he was a member of the National Rifle Association (NRA) and the North American Hunting Club and that he had taken his firearms to various gun shows and displayed them. He also testified that he had used the derringer for target practice and to kill animals that he had previously wounded while hunting. He further testified that he took the derringer with him to the motorcycle rally in South Dakota, but he did so only to protect himself from bears and other animals while he was camping by himself. He testified that he had a concealed weapons permit for Washington, but not for South Dakota.

The district court denied Kissinger a reduction in his offense level under Guidelines § 2K2.1(b)(1), finding that, although Kissinger had a collection of weapons in Washington, he removed the derringer from the collection and took it with him to South Dakota to use for personal protection—not for collection or sporting purposes.

---

1. The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

**1246**

Kissinger had the burden of proving that he obtained and possessed at the time of his arrest the .357 derringer for lawful sporting or collection purposes. *See United States v. Dinges,* 917 F.2d 1133, 1135 (8th Cir.1990) (burden of proof); *United States v. Smeathers,* 884 F.2d 363, 364–65 (8th Cir.1989) (per curiam) (holding that, despite disjunctive language "obtained or possessed" in actual Guideline, commentary indicated legislative intent was to allow offense level reduction only when firearm was acquired *and* possessed at time of arrest for lawful purposes). We may reverse the district court's findings regarding Kissinger's purposes in possessing the firearm only if they are clearly erroneous. *United States v. Dinges,* 917 F.2d at 1135.

We disagree with Kissinger's assertion that the district court based its decision merely on the fact that Kissinger possessed the firearm at the same time he used narcotics, without determining whether he possessed the firearm for a lawful sporting or collection purpose. The district court specifically found that Kissinger kept the derringer in Washington as part of his collection of weapons, but that when he removed the derringer from his collection and carried it with him to South Dakota to use for personal protection, he no longer possessed it for collection or sporting purposes. This finding is not clearly erroneous.

Kissinger did not testify that he intended to display the derringer during his trip to South Dakota or that he traveled there in connection with his associations in the NRA or the hunting club. He testified that he carried the derringer for protection against animals while he was traveling and camping alone. Although a camping trip itself is arguably a sport, we conclude the district court did not err in concluding that use of the firearm for protection while on the trip was not a sport. Furthermore, we conclude the surrounding circumstances supported the district court's determination that Kissinger did not possess the firearm solely for sporting or collection purposes. Kissinger was not arrested in a campground or rest area; rather, he was arrested after officers discovered him lying face down and intoxicated along the highway. Kissinger had two weapons concealed in his boots—a knife and the loaded firearm. Also, Kissinger had not obtained a permit to carry the gun in South Dakota, and he had a prior conviction involving the unlawful carrying of a firearm. *See* U.S.S.G. § 2K2.1, comment. (n. 2) (1990) (intended lawful use of firearm is determined by relevant surrounding circumstances including number and type of firearms and ammunition, location and circumstances of possession, whether defendant's criminal history involved firearms, and extent to which possession of firearm was restricted by local law).

Accordingly, we affirm the judgment of the district court.