16 F.3d 1222
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Howard Jay KAPLAN, Defendant-Appellant.
 No. 93-1033.
 United States Court of Appeals, Sixth Circuit.
 Jan. 18, 1994.
 
 Before: BOGGS and SUHRHEINRICH, Circuit Judges; and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-Appellant Howard Jay Kaplan, after pleading guilty to being a felon in possession of a firearm and making a false statement in connection with firearms acquisitions, was sentenced to twenty-seven months' imprisonment. He disputed the district court's computation of his appropriate offense level under the United States Sentencing Guidelines. Kaplan argued that his situation fell within a Guideline provision that limits the total offense level of a defendant when the illegally-possessed firearms are held solely for lawful sporting or collecting purposes. The district court denied the reduction, basing the decision on its legal interpretation of the disputed Guideline provision, and he appealed. We rejected the district court's interpretation of the law, and we remanded the matter to that court for further consideration, this time in the light of the correct legal standard. Once again, the district court has refused to grant Kaplan a sentence reduction, and once again he has appealed. However, for the reasons set forth below, we now affirm the district court's factual finding that Kaplan's firearms were not possessed solely for lawful sporting or collecting purposes.
 
 
 2
 * On March 20, 1991, Kaplan pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. Sec. 922(g), and making a false statement in connection with a firearm acquisition, in violation of 18 U.S.C. Sec. 922(a)(6). At sentencing, he argued that his base offense level should be no higher than 6 because he possessed his firearms solely for lawful sporting or collecting purposes. U.S.S.G. Sec. 2K2.1(b)(1) (Nov. 1990).[1] However, at Kaplan's sentencing, the district court held (1) that the lower level could not apply to a felon in possession charge; (2) that target shooting at a gun range, as practice for competitive shooting, is not a lawful sporting purpose; and (3) that Kaplan had not possessed his firearms as a "collection" because the display that he had mounted on the walls of a locked room in his home included law-enforcement weapons, brass knuckles, and paramilitary memorabilia that were not for sporting purposes.
 
 
 3
 Kaplan appealed, and this court reversed, holding that (1) U.S.S.G. Sec. 2K2.1(b)(1) (Nov. 1990) could be applied to certain "felons in possession"; (2) shooting at gun ranges could be a "lawful sporting purpose" if it "was indeed practice for a lawful sport-shooting purpose"; and (3) Kaplan's guns could come within the definition of a "collection," even though the collection included items other than guns. United States v. Kaplan, No. 91-2003, slip op. at 16-17 (6th Cir. July 17, 1992) (per curiam). Consequently, this court remanded the matter for consideration of whether this case's particular fact pattern justified the lower offense level under the applicable law. In remanding the case, this court also referred the district court to the United States Sentencing Commission's official commentary, which sets forth "relevant surrounding circumstances" to consider when applying this Guideline,
 
 
 4
 includ[ing] the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history (e.g., prior convictions for offenses involving firearms) and the extent to which possession was restricted by local law.
 
 
 5
 U.S.S.G. Sec. 2K2.1, comment. (n. 10) (as amended) (emphasis added).[2]
 
 
 6
 Upon remand, the district court reconsidered Kaplan's arguments, but found once again that he failed to qualify for the lower offense level under U.S.S.G. Sec. 2K2.1(b)(2) (as amended). In the course of resentencing Kaplan, the district court specifically referred to Application Note 10 (as amended).
 
 
 7
 First, the court looked at the "circumstances of [Kaplan's] possession and actual use." The district court cited a report from Special Agent Nielsen of the Bureau of Alcohol, Tobacco, and Firearms (ATF), describing an interview that she and another ATF agent conducted with Kaplan.[3] In the interview, Kaplan discussed his occasional role as a confidential government informant and his concomitant fear of being unarmed, especially after he had received threats from one "Bobby the Greek" and from his ex-wife's new boyfriend. He told the agents that he usually carried a .38-caliber Smith & Wesson revolver, "and used to always keep a gun under the seat of his car." As a result, the court found that the "circumstances of [Kaplan's] possession and actual use" of his ammunition and firearms were not solely for "lawful sporting purposes or collection."
 
 
 8
 Furthermore, the district court noted a 1986 incident in which Kaplan was found to be heavily armed and in full police uniform, falsely claiming that he worked for the sheriff's department. Consequently, the court found that "at least one purpose for possessing some of these weapons was for defendant's putative law enforcement or vigilante activity." In addition, as to Kaplan's contention that he used his guns for the "lawful sporting purpose" of target-shooting, the district court found upon remand that "the record is minimal as to sport-shooting participation; it is largely concerning practicing for sport shooting."
 
 
 9
 Next, the court evaluated "the nature of the defendant's criminal history." It found that Kaplan had twice before been convicted of breaking and entering to steal guns, once in 1974 and again in 1981.
 
 
 10
 Third, the court looked at "the extent to which [his prior] possession was restricted by local law." It found that he had never had a permit to carry a concealed weapon "but continues to do so in the pretense that he is entitled to exert or threaten lethal force against other human beings." Michigan law prohibits the carrying of a concealed weapon without a permit. Mich.Comp.Laws Ann. Sec. 28.422 (West 1981 & Supp.1993).
 
 
 11
 In consequence of the court's findings that Kaplan's firearms collection had been gathered in violation of the law, by a convicted felon, and not solely for lawful sporting or collecting purposes, the court imposed on Kaplan the same sentence and fine originally imposed. Kaplan timely appeals the court's sentence.
 
 II
 
 12
 The determination of whether firearms were used solely for lawful sporting purposes or collection "is a question of fact and as such is to be reviewed under the clearly erroneous standard." United States v. Morrison, 983 F.2d 730, 732 (6th Cir.1993). The burden rests on the defendant to prove by a preponderance of the evidence that a reduction in the guidelines offense level is warranted. Ibid. However, whether the district court has correctly applied those determined facts to a particular guideline provision--for example, whether Kaplan's intensive daily target practice at a gun range constitutes "lawful sport" activity--is a purely legal question and is reviewed de novo by this court. United States v. Garner, 940 F.2d 172, 174 (6th Cir.1991).
 
 
 13
 In reconsidering Kaplan's claim upon remand, the district court found as a fact that Kaplan had used at least one gun from his collection for perceived self-defense purposes. Such a use would make Kaplan ineligible for the U.S.S.G. Sec. 2K2.1(b)(1) sentence reduction. See, e.g., United States v. Wilson, 878 F.2d 921, 924 (6th Cir.1989) (applying a literal reading to Section 2K2.1 that would deny a sentence reduction where the firearm is possessed for an innocent purpose other than the two specific purposes that are spelled out in the Guidelines); accord United States v. Kissinger, 986 F.2d 1244, 1246 (8th Cir.1993) (holding that the offense-level reduction would not apply to a defendant who had removed a derringer revolver from his personal collection in Washington state and had carried it with him to South Dakota, to use for personal protection). Kaplan challenges the district court's factual finding, and we review it for clear error. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Perez, 871 F.2d 45, 48 (6th Cir.) (quoting Archer v. Macomb County Bank, 853 F.2d 497, 499 (6th Cir.1988)), cert. denied, 492 U.S. 910 (1989).
 
 
 14
 At sentencing, and again at resentencing, Kaplan introduced four law enforcement officers' statements. These officers had all worked with Kaplan in his role as confidential informant. Kaplan points out than none of the officers stated that he had ever been armed while providing information. Moreover, Kaplan notes, he was unarmed at the time that he was arrested, and all the weapons that were charged in the Information against him were found unloaded in a locked room in his house. However, at resentencing, the Government introduced Special Agent Nielsen's report of the ATF agents' interview with Kaplan. In that document she reported Kaplan as saying that he usually carried a .38-caliber pistol and "used to always keep a gun under the seat of his car."
 
 
 15
 Kaplan's counsel contends that a careful analysis of Agent Nielsen's report shows that Kaplan began the interview by expressing his fear of being unarmed and that his story built up "steam" and bravado as he attempted to impress the ATF agents with his risk-defying role. Therefore, his statements to the ATF should not be judged as factually accurate. In response, the Government notes that the court had the choice of believing one of two alternative fact patterns. In choosing to believe Kaplan's own statements about how he used his guns for protection, uttered after he had been advised of his Miranda rights and after he had signed and dated a "Statement of Rights" card, the court was not clearly erroneous.
 
 III
 
 16
 In his appeal, Kaplan not only challenges the district court's findings of fact but also raises various questions of law.[4] However, we need not address those other questions because Kaplan did not meet his burden to prove by a preponderance of the evidence that his firearms were used solely for lawful sporting purposes or collection. "Solely" means "SINGLY, ALONE ... to the exclusion of alternate or competing things." Webster's Third New International Dictionary 2168 (1986). The Guidelines speak for themselves. And, unfortunately for the defendant-appellant, he spoke for himself during his interview with the ATF special agents. For the foregoing reasons, the decision by the district court to deny Kaplan a lower offense level under U.S.S.G. Sec. 2K2.1(b)(1) is
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 That section provides: "If the defendant obtained or possessed the firearm or ammunition ... solely for lawful sporting purposes or collection, decrease the offense level ... to level 6." (Emphasis added.) Both parties concur that the Guidelines in effect at the time of the original sentencing, as opposed to the Guidelines in effect at the time of resentencing, should be applied because the later version would substantially increase Kaplan's base offense level. The current version of U.S.S.G. Sec. 2K2.1(b)(1) is found at id. Sec. 2K2.1(b)(2), and its wording differs slightly
 
 
 [2]
 In its analysis and remand, this court quoted and referred to the sentencing guideline and its application note by their current, amended versions: U.S.S.G. Sec. 2K2.1(b)(2) and U.S.S.G. Sec. 2K2.1, comment. (n. 10) (effective Nov. 1, 1991). The original district court decision, however, referred to the earlier, though similar, versions: U.S.S.G. Sec. 2K2.1(b)(1) and U.S.S.G. Sec. 2K2.1, comment. (n. 2) (Nov. 1990). See also supra note 1
 
 
 [3]
 The Nielsen interview of May 1990 was submitted to the district court on August 23, 1991, five months after Kaplan pleaded guilty to the two counts for which he was charged--and only three days before his August 26 sentencing. The court refused to consider the document's substance at the original sentencing in 1991 because the defendant had claimed surprise. However, the court decided that, for resentencing purposes, it would consider that same interview and report because, in the interim, the defense had been given the opportunity to prepare a response to it
 Agent Nielsen interviewed Kaplan in May 1990. She prepared at that time a four-page summary of that interview, and the Government submitted that document during the resentencing phase. Along with the report, the Government submitted a one-paragraph cover letter from Agent Nielsen, dated August 23, 1991, in which she reiterated her recollection that Kaplan's reason for collecting firearms, after his previous conviction as a felon in possession, "was that he was concerned about being unarmed as a confidential informant for law enforcement agencies."
 Nielsen appeared at the resentencing hearing as a Government witness. Kaplan's attorney declined the opportunity to cross-examine her.
 
 
 [4]
 For example, Kaplan challenges the district court's determination that "the record is minimal as to sport-shooting participation; it is largely concerning practicing for sport shooting," not actual competition against other shooters. However, because Kaplan used at least one of his firearms for a purpose other than those of lawful sport or collecting activity, we need not decide that question